FURNISS and another, *appellants,* and HONE and others, *respondents.*

Where, to a bill in chancery, charging certain goods to have been sold at *auc-tion,* to be paid for in approved endorsed notes at six months, and that such goods were delivered to the buyer, in pursuance of a usage existing in the city of New-York, to deliver them when called for, and afterwards to call for the notes to be given in security for the payment of the goods, averring such delivery to be *conditional*—the defendant answered, denying the pur-chase upon the terms stated in the bill, and alleging that the goods were bought under a *special agreement,* by which he was at liberty to settle for such purchases as he should make at the auction sales of the complain-ants, in the notes of his customers, endorsed by himself, at such rea-sonable times after the purchases as should suit his convenience, and in-sisting that the delivery of the goods to him was *absolute,* and that the com-plainants had no lien—IT WAS HELD, that the delivery of the goods was absolute, and that the complainants were not entitled to an *injunction,* stay-ing the proceeds of the sales of the goods in the hands of an assignee under a voluntary assignment, executed within *ten days* after the sale, for the benefit of certain favored creditors of the assignor.

Whether a delivery of goods under a *usage* or custom in the city of New-York, where goods are sold at auction, to be paid for in approved en-dorsed notes, to deliver the goods to the buyer when called for, and af-terwards to send for the notes, be an *absolute delivery* so as to pass the title, or only *a conditional delivery—Quere.*

Whether, in pleading such *usage,* so as to make it beneficial, it be neces-sary to aver, that notwithstanding such delivery, it is the known usage and custom for vendors in such sales to *reclaim* the property, if the con-ditions be not complied with—*Quere.*

If such usage was established, *it seems* that a delay of *seven days* in sending for the notes would be considered a *waiver* of the condition.

APPEAL from chancery. On the *eleventh* day of September, 1828, Furniss, one of the appellants, bought of the respondents,

who are *auctioneers* in the city of New-York, goods *at auction* to the amount of $235,40, and on the *sixteenth* of the same month purchased another parcel, amounting to $242,06. The goods were delivered to Furniss, with bills of sale accompanying the same ; the second bill specifying that the goods were sold at a *credit of six months*. On the *nineteenth* of September Furniss stopped payment, and on the next day he executed an assignment of his goods, including such of the goods purchased by him of the respondents as remained unsold, and which principally did remain unsold, to Duane, the other appellant in this case, *in trust* for certain of the creditors of Furniss. On the *twenty-second* of September the goods were removed to the actual possession of Duane, who on the next day shipped them to Philadelphia, where they were sold at auction, and the proceeds remain in the hands of Duane. On the *twenty-third* of September the respondents requested Furniss to *re-deliver* the goods to them, which he refused to do ; and on the *twenty-fifth* of September they demanded of him a *note with an improved endorser*, for the amount of the goods sold to him, which demand he also refused to comply with. The respondents thereupon, on the *twenty-fifth* of September, filed their bill in chancery, alleging that the goods were sold at auction, to be paid for *in approved endorsed notes at six months,* that it is the *known usage and custom* in the city of New-York, when goods are sold at auction to be paid for in approved endorsed notes, to deliver the goods to the buyer when called for, and afterwards to send for the notes so given ; that the goods in question were delivered to Furniss, according to such usage and custom, and that the notes were sent for according to the terms of the sale, when the respondents learnt that Furniss had stopped payment ; that Furniss had refused to give such notes, or to re-deliver the goods. The charge in the bill is, that the delivery of the goods to Furniss was *conditional,* and that the assignment to Duane being voluntary, was an act of *fraud*, and ought not to deprive the respondents of their *lien* upon the goods. The bill prayed for discovery, and an injunction, restraining Duane from paying over the proceeds of the sale to the creditors for whose benefit the assignment was executed.

The appellants put in their several answers to the bill. Furniss *admits* the sale and delivery of the goods, but avers that

such sales and delivery were under and in pursuance of an *agreement* made between one of the respondents and himself, on or about the 1st October, 1826, to the effect that he should be at liberty to purchase at the *auction sales* of the respondents, and settle for such purchases in the notes of his customers, (received in the course of business upon the sales of goods) endorsed by him, making the necessary discounts, so as to make the notes equivalent to the general terms of sale; the purchases to be settled for at such reasonable time thereafter as should suit his convenience. He then avers that his purchases at the auction sales of the respondents had all been made under such agreement, and not subject to the general terms of sale; that the goods purchased by him were delivered at, or immediately after the sales, and the same settled for at such time and in such manner as suited his convenience. He denies that the goods purchased by him on the 11th and 16th September were to be paid for in approved endorsed notes at six months, and avers that they were to be settled for agreeably to the terms of the agreement of October, 1826. He admits that he stopped payment on the 19th September, but denies that at the times of the purchases of the goods in question he *knew* he was insolvent, though he admits at the time of putting in his answer that he now believes he was then in insolvent circumstances; he denies that he made the purchases in contemplation of insolvency and failure in business, and avers that the purchases were made in good faith, and under the expectation and belief that he would be able to settle for the same agreeably to the terms of the agreement of October, 1826; that he was at the time in full business, and daily buying and selling to a much larger amount than the two bills of goods in question, and so continued to the day of his failure; that he was in the daily receipt and payment of money to a much larger amount than the two bills, and that to the day of his failure he did not suppose that he would be obliged to stop payment. He admits that the *assignment* to Duane was voluntary, and made to secure certain confidential creditors; denies that the goods were delivered to him by the respondents *conditionally*, and avers that they were delivered unconditionally and absolutely, and not subject to any claim or lien of the

respondents, but as absolutely the property of him, (Furniss,) as if the same had been paid for in cash, the same being delivered under the agreement of October, 1826, and denies that the assignment was *fraudulent*. *In answer to the interrogatory* part of the bill, he says that the goods were sold to him at a credit of six months, to be settled for by him within such reasonable time thereafter as suited his convenience, in the notes of his customers, received in the course of trade and business, on the sale of goods by him, to be endorsed by him; and that he has been unable to comply with the terms of the sale in consequence of his embarrassment and failure.

Furniss further admits that it is the known *usage* and custom in the city of New-York when goods are sold *at auction* to be paid for in approved notes, to *deliver the goods* to the purchaser immediately, or when called for, and afterwards, and generally on Saturday of each week succeeding the sales, to send for the notes so to be given on the settlement of the purchases, but that such usage *is not confined to sales at auction*, but is common to private sales; that such *delivery*, either at auction or private sales is *absolute* and *unconditional*, and that the title to the goods so delivered is as completely vested in the purchaser as if the same had been paid for in cash, the auctioneer depending upon the *legal liability* of the purchaser to furnish the approved endorsed notes, and not upon any lien remaining upon the goods. The delivery in such case by *auctioneers* is not considered as giving or saving to them any claim or lien upon the goods sold, and their rights are not considered as at all differing from the rights of *vendors at private sale* for cash or notes where the goods are delivered before an actual payment of cash or delivery of notes. That *auctioneers* claim the right to withhold goods sold at auction until they are settled for agreeably to the terms of sale, and that they exercise that right in all cases where the purchaser is a stranger, or his character for responsibility is unknown. *Duane*, the other appellant, concurs with Furniss in his answer in relation to the *usage* set up by the respondents; and in relation to the *assignment*, says, that he has no personal interest therein, that he received the assignment without notice of the claim of the respondents, that the proceeds of the sales of the goods are in his hands,

and that he holds the same as trustee for the persons named in the assignment.

A motion, founded on the bill and answer, was made to *dissolve the injunction*, which was denied by the chancellor, and the appellants ordered to pay the costs of the motion. From this order an appeal was made. The following is the opinion which was delivered by the CHANCELLOR :

" There is nothing particular in this case to take it out of the rule adopted in a great variety of other cases, as to conditional deliveries on these auction sales in the city of New-York. That part of the answers, in which the defendants undertake to swear the law is otherwise, must be disregarded. If the goods were to be paid for in the notes of general customers of the purchaser endorsed by him, the principle is the same. If to be paid in notes received on the sale of the same goods, the delivery would indeed be absolute : but in that case the complainants would have a specific lien on the notes taken on such re-sale ; and Duane, as a general assignee to secure antecedent debts, could not hold the goods against the complainants' claim. Motion refused with costs."

*D. B. Tallmadge*, for appellants. The equity of the bill in this case is supposed to rest upon the alledged *local custom* or *usage of trade* of the auctioneers in New-York, giving them a *lien* and a right to *reclaim* goods after a delivery, when the purchaser refuses to furnish the endorsed notes required by the terms of sale. If such *usage* exists, it is *insufficiently* alledged in the bill, and therefore the injunction should be dissolved. The *usage* is against the general law of the state, which is, that if goods are sold for which notes are to be given, and the property is subsequently delivered by the vendor, without at the time requiring the notes, or *annexing a condition to the delivery*, the condition is *waived*, and the *right of property passes*. 6 Cowen, 110. 2 Mason, 236. 6 Wendell, 77. The case of *Haggerty* v. *Palmer*, 6 Johns. Ch. R. 435, has been supposed to establish a different rule. The decision there is founded upon the *usage* assumed to exist in relation to *sales at auction*. The whole doctrine, however, is reviewed by Chan-

cellor *Kent,* in his Commentaries, Vol. II, p. 391, and the only exception stated by him to the general rule, " that on delivery the property passes," is, that if the seller accompanies the delivery with a declaration that he will not consider the goods as sold until the security be given, the sale will in such case be held to be *conditional,* and the property will not be deemed to pass by the delivery, as between the original parties. In support of the principle of *usage,* adopted in *Haggerty* v. *Palmer,* the chancellor relies upon Lord Seaforth's case, 19 Vesey, 235, but that case does not support him. General and ancient customs are not the subject of proof ; they must be resolved by the judges as part of the common law of the land ; but a *local usage* or custom may be proved, and therefore must be averred with due certainty ; for to render it available, it must be *clearly proved.* 4 Starkie's Ev. 444. 2 Johns. R. 531. 7 East, 234. 6 id. 520. Norris' Peake, 642. 2 Saund. Pl. & Ev. 169. The only allegation in the bill is, that it is the known usage and custom in the city of New-York, when the goods are sold at auction, to be paid for in approved endorsed notes, to deliver the goods to the buyer when called for, and afterwards to send for the notes so to be given ; admitting such to be the *usage,* it does not necessarily follow that the vendor who so delivers the goods, may by usage *reclaim* them, if the notes are not given when sent for. If it be the usage to reclaim the goods upon the neglect or refusal to give the notes, such usage ought to have been averred, and being averred, must have been clearly proved, if not admitted, and such proof must have been not by the *opinion* of merchants, but by *acts of usage* certain, compulsory and consistent, within the knowledge and experience of living witnesses, shewn by repeated instances of property reclaimed by auctioneers, where it would have been for the interest of the purchasers to dispute their right. 4 Starkie's Ev. 452. 2 Burr. 1228. Doug. 519. 6 East, 520. 7 Barn. & Cres. 212. In *Haggerty* v. *Palmer,* the usage was not sufficiently charged, nor is it in this case ; if, however, it be considered as alleged with sufficient certainty in the bill, being denied by the answer, the injunction ought to have been dissolved. The answer does not deny the *law* applicable to a local custom, as it is understood by the chancellor, but the ex-

istence of the usage or custom is denied. Again; if there be such *usage* or custom, the notes should have been called for within a day or two after the sale. The only reason there can be for permitting the goods to pass into the possession of the vendee before requiring the notes to be delivered, is to enable him to examine the parcels, to see that all is right. Here 12 days, as to one parcel, and 7 as to the other, elapsed after the sale, before a demand was made of the notes, or of a return of the goods; clearly shewing that the vendor reposed upon the *legal liability* of the vendee, and not upon any *lien* he might have. See 6 Pick. 262. The conclusive answer, however, to the claim of the vendors is, that the goods were purchased under a *special agreement*, by the terms of which the delivery of the goods was to precede the delivery of the notes, and consequently the delivery of the goods was not conditional, or subject to any usage of trade. The right of lien is deemed waived when a party enters into a special agreement, inconsistent with the existence of the lien, or from which a waiver of it may fairly be inferred. 2 Kent's Comm. 500. 16 Vesey, 275.

*C. V. S. Kane & H. Bleecker*, for respondents. It is undeniable, and indeed conceded on the other side, that if the vendor of goods, for the price of which notes are to be given, delivers the goods without exacting the notes, accompanying the delivery, however, with the declaration that he will not consider the goods as sold until the notes are given, that the title to the property does not pass to the vendee, as between the parties to the sale, until the condition be complied with. Here although no *express* condition was imposed at the time of the delivery, from the nature of the case, and from the course of business attending *auction sales*, it will be *implied*. The goods generally are not present, and of necessity there must be a delivery to the vendee to enable him to examine whether they correspond in kind and quantity with the goods intended to be purchased, previous to giving the notes. Delivery does not of course pass the property; whether it be absolute or conditional depends upon the intentions of the parties. 1 H. Black. 262. 4 Bos. & Pul. 449, 457. 3 Campb. 92. Where any act remains to be done, the lien continues and the property does not pass. 6 East, 614. 2 Maule & Sel. 397. 17 Mass R. 606.

3 Serg. & Rawle, 20. 6 Pick. 266. 12 Johns. R. 434. 7 Cowen, 85. Where *approved endorsed notes* are demanded by the terms of the sale, more than the personal responsibility of the vendee is looked to, and when those terms are distinctly understood, the mere fact of permitting the goods to pass into the possession of the vendee cannot be considered as a *waiver* of the terms. Where the delivery of the goods and the giving of the notes are by the terms of the contract to be simultaneous acts, and the goods are delivered without exacting the notes, and without a declaration that the sale will be held incomplete until the notes are given, a *waiver* may well be implied; but not so, when, by the usage of the trade, the delivery of the goods precedes the giving of the notes; and such is expressly admitted by the answers to be the usage in New-York, not only in respect to *auction sales*, but as relates to private sales. If the delivery was absolute, still it was subject to an *equitable lien* on behalf of the vendors; the goods were delivered in the trust and confidence that notes received on the sale of the same goods; and endorsed by the vendee, would be given. The vendors, therefore, had a specific lien on the notes or proceeds of the goods. Duane was merely a general assignee, without consideration: he had made no advances, nor parted with rights on the faith of the goods. In *Haggerty* v. *Palmer*, 6 Johns. C. R. 437, which was a case similar to the present, it was held by Chancellor *Kent* that the assignment by the vendee did not defeat the equitable lien of the vendor. The same principle was advanced by Chancellor *Jones* in the case of *Addis* v. *Hefuld*, not reported, and by the present chancellor, in *Keeler and Freeman* v. *Field and others*, 1 Paige, 312. See also 11 Johns. R. 63; 4 id. 216; 15 Mass. R. 156; Sugden on Vendors, 364; 2 Kent's Comm. 387. There can be no objection to this rule on the score of public policy, as the *lien* thus conceded to the vendors does not affect subsequent *bona fide* purchasers. The assignment was fraudulent; the immediate and voluntary assignment of the goods, their shipment to Philadelphia and sale at public auction, are circumstances strongly suspicious. In the case of *Haggerty* v. *Duane & Furniss*, 1 Paige, 321, similar circumstances were declared to be liable to strong suspicion.

The *usage* is set forth in the bill with sufficient certainty ; it is not necessary that the legel consequences or results arising from a particular usage should be stated, such consequences being conclusions of law which need not be averred or proved. 2 Merrivale, 404. 4 Taunt 642. If the vendors had a lien, the omission for a few days to call for the notes could not destroy their right ; the only effect of the delay was to increase the risk. Nor can the agreement of October, 1826, be set up to destroy the lien of the vendors. If such agreement was made, it was not uniformly acted upon, as by the answer of Furniss it appears that in three out of six purchases made by him of the respondents, he paid for goods in *endorsed* notes instead of *customers'* notes.

The counsel remarked that the case of *Conyers* v. *Ennis*, 2 Mason, 236, had no application here, as the only question decide there was, that the mere *insolvency* of the vendee was not sufficient to give the right to reclaim ; there was no question there as to the non-performanee of a condition, either express or implied ; that the case of *Chapman* v. *Lathrop*, 6 Cowen, 110, did not overrule *Palmer* v. *Hand*, 13 Johns. R. 434, nor *Haggerty* v. *Palmer*, 6 Johns. Ch R. 437 ; and that the case of *Marie* v. *Lupin*, 6 Wendell, 77, was clearly distinguishable from the present, as there the vendee by the terms of the sale was to give only his own notes, and not as in this case endorsed notes.

*Tallmadge*, in reply. There is no greater necessity in auction sales for permitting the property to pass to the possession of the purchaser before the payment, than in other sales. If a purchaser is not willing to rely on the samples furnished at the sales, let him examine the goods in the auctioneer's warehouse ; or if the vendors intend to retain a lien, why not say so at the delivery of the goods ? Auctioneers are not bound to deliver the goods until payment or security for the payment is received, and in fact they do not deliver the goods without payment or security, when the purchaser is a stranger or his responsibility not known. Whenever there is a delivery without qualification, there is a personal trust, and the lien is gone. Fraud cannot be insisted on ; it is not even charged in the

bill, but if it was, the circumstances detailed in the answer rebut all presumption of fraud. 2 Mason, 236.

The following opinions were delivered :

By Mr. Justice NELSON. Upon a sale of goods to be paid for, or security to be given on delivery and a delivery made without exacting either, and no fraud in the case, a complete title passes to the purchaser, and the vendor cannot afterwards reclaim the property upon a refusal to comply with the terms of the sale. After such delivery, the law considers the vendor as trusting solely to the personal responsibility of the vendee. This rule of law was fully acknowledged in this court, in the recent case of *Lupin* v. *Marie,* 6 Wendell, 77. In that case, the idea of a lien for the purchase money, after an unconditional delivery of the goods, was repudiated as unfounded both in law and equity. It is equally well settled, that if the sale and delivery are conditional, or there is fraud or imposition on the part of the purchaser, though the property passes, the title does not ; and on a refusal to comply with the terms of the sale, the vendor may pursue the property and reclaim it, unles protected in the hands of a *bona fide* purchaser. This, indeed, is little more than a deduction from the first proposition, and is fairly implied from its terms. There are many cases of conditional sales to be found in the books, but my researches have extended to none where the vendor was permitted . to reclaim the property from the purchaser after delivery, except where fraud existed, unless the delivery, as well as the sale, was conditional, or so viewed by the court. 6 Johns. Ch. R. 438. 1 Paige, 312. id. 322. 4 Mass. R. 405. 4 Pick. 516. 6 id. 262. Undoubtedly, whether the delivery is conditional or absolute must depend upon the intent of the parties at the time the goods are delivered ; and it has been urged by the respondents, that the circumstances connected with the delivery, as regards *auction sales,* known to both parties, explain the transaction, and are sufficient to establish the condition. The *onus* of the proof of the condition, (the delivery being admitted,) no doubt rests upon them, otherwise it will be deemed absolute. Assuming this to be so, they set out in

their bill, and which is admitted in the answer of Furniss, that it is the known usage and custom in the city of New-York, when goods are sold at auction, to be paid for in approved endorsed notes, to deliver the goods so sold to the buyer when called for, and afterwards to send for the notes so to be given. Now it is contended that the delivery in these cases is in conformity to this known general usage, subject to the expectation and condition, that the endorsed notes will be ready when called for, and not with the intent or understanding of either party that the title to the property, or the lien upon it for the purchase money, shall be parted with until the security be given. This is the construction which has repeatedly been given to these auction sales by the court of chancery in this state, previous to the decision of the chancellor in the present case. *Haggerty* v. *Palmer*, 6 Johns. Ch. R. 437. *Addis* v. *Hefuld*, MSS. per Ch. Jones, and *Haggerty* v. *Duane and Furniss*, 1 Paige, 321. And it seems to me this general usage of business known to all parties, and of course presumed to enter into their consideration in dealing with one another, with the attending circumstances, may fairly warrant the construction given to those sales. The transaction is not considered complete until the endorsed notes are received by the very terms of the sale; but for the convenience of all parties concerned, the property is delivered to the purchasers, subject to those terms. That the vendor does not intend to trust to the personal responsibility of the purchasers, appears from the conditions of the sale; the bill of sale also which is made out, containing the conditions and accompanying the delivery of the goods, strongly confirms this construction of the understanding and intent of the parties, and, all together, is as satisfactory to my mind as if the vendor had expressly declared the delivery conditional, which is deemed sufficient within all the cases. There is nothing new or peculiar in these cases in looking at the usage and custom of the trade, to ascertain the understanding of the parties in a transaction connected with it. Many instances of the kind might be referred to; a striking one is where the court infers an agreement to pay interest upon an unliquidated account, after a given credit, from the

ALBANY,
Dec. 1831.

Furniss
v.
Hone.

general usage and custom of a store. The fact that the sales are generally conditional, and that the delivery on such sales is made without at the time exacting performance of the condition, is evidence of the intent of the parties to carry it into the delivery, otherwise the terms of sale are unmeaning and idle. But when these terms accompany the delivery by the bill of sale, it seems to me to put the question beyond doubt. The delivery is subject to them.

The position of the counsel for the appellants, that this class of cases in the court of chancery rested upon a *local custom*, or usage of trade with auctioneers in the city of New-York, paramount to, and controlling the general law of sales, is without foundation. If such were the fact, the objections of the counsel would have been sufficient to overturn them. As was contended by him, such custom or usage, to have the effect supposed, must be clearly established by proof, if denied; and I would be very reluctant to yield to any exception to the general law of sales of personal property, in reference either to place or business. Such exceptions tend to render the law of property complex and unequal in its operation, and should not be encouraged. But it will be seen, upon an examination of these cases, that the court of chancery does not change, or profess to change the general rules of law, and that all of them turn upon the application of principles long settled and acknowledged, both at law and in equity. The simple question in all of them was whether the sale and delivery was absolute or conditional. If then this case turned upon the custom and usage of trade among auctioneers in the city of New-York, and came within the auction cases which have frequently been decided in the court of chancery, I would be in favor of confirming the construction given to those sales, and of course would affirm the order of the chancellor. But it appears from the answer, that one of the respondents made an agreement with Furniss, that whatever might be the general terms of the auction sales, he should be at liberty to purchase goods, and settle for them in the notes of his customers received in the course of his business, endorsed by himself, making the necessary discounts, so that the notes would correspond with the terms of the sale; and that he might settle for such pur-

chases in such reasonable time thereafter as would suit his convenience. Furniss sets up in his answer that the purchases were made in this case, and the goods delivered under this special agreement, and not according to the usage of the trade ; and a schedule of goods bought under this agreement, and which appear to have been paid for in pursuance of it, is given in confirmation of his allegation. For the purpose of this decision, we must assume the answer to be true, and the consequence is, that this special agreement takes the sale and delivery of the goods out of the protection of the usage and custom of the trade, and the case falls within the general principles of law contained in *Lupin* v. *Marie*. Under this agreement, the court are not at liberty to resort to the usage and course of trade, for the purpose of collecting the the understanding and intent of the parties in reference to the delivery of the goods, or of annexing any tacit condition to the same, because the parties have expressly regulated the terms and conditions of the transaction, by a special arrangement between themselves. By that they must be governed ; and it evidently contemplates a delivery without any condition, giving to the purchaser a future day or time in which to provide the security to be given. While this special agreement continued in force, it controlled the general usage or custom ; and as that is the only ground upon which the condition can be annexed to the delivery, it necessarily follows that it must be considered absolute upon the principles above stated.

The answer, therefore, denies the ground upon which the bill is framed, and upon which the respondents must place their right to reclaim the property, to wit, that the goods were purchased and delivered according to the usage and custom of the trade, and of consequence denies the equity of the bill; and I need not cite authorities to shew that in such a case the appellants, the defendants below, were entitled to a dissolution of the injunction.

I lay out of this case the question of fraud, which was not much pressed upon the argument, because it is positively denied by the answer, which, for the purpose of this decision, as before stated, we are bound to assume to be true.

ALBANY,
Dec. 1831.

Furniss
v.
Hone.

Having come to the conclusion that the answer takes this case out of the principles applicable to auction sales, and that a complete title passed to the purchaser upon the delivery of the goods to him, it is unimportant to examine any other of the questions raised in the case. I think the chancellor should have dissolved the injunction, on the ground that the answers deny the equity of the bill, and am therefore of opinion that the order of the chancellor, refusing the motion to dissolve the injunction ought to be reversed.

By Mr. Senator ALLEN. Whether the terms of the purchases, made by the appellant, Furniss, were as stated in the bill, or as admitted by him in his answer, the conclusion is the same. In my opinion the sales in either case are *conditional*, and the appellant, Furniss, admits that he has not on his part complied with the additions of the sale. I consider a sale conditional when goods are sold on the credit of a surety, in addition to that of the vendee, such as an endorser or other guarantor of payment, or when they are sold for cash. If in such case the condition is not complied with, the vendor has not the security contracted for, and in the event of the failure of the vendee before the condition is complied with, material loss may be sustained by the vendor, if his lien on the goods is taken from him ; but when a sale is made on the credit of the vendee only, and he is to give no other security than his individual note, the vendor is in no worse condition in the event of failure, if he has not received the note than he would be if he had, as in either case the responsibility of the individual is all he could look to. In *Rapelye* v. *Mackie*, 6 Cowen, 250, it was held that when something remains yet to be done as between the buyer and seller, or for the purpose of ascertaining either the quantity or price of the article sold, there is no delivery, and the property does not pass, though the price be in part paid ; and there need not be an *express agreement* that something farther shall be done : it is enough that it appears from the circumstances of the case to be necessary. In the present case the goods were delivered by the seller, but there remained to be performed by the buyer the engagement on his part of the delivery of the notes, in accordance with the

conditions of the sale; the property, therefore, did not pass but continued in the vendor. In the case of *Marston* v. *Baldwin,* 17 Mass. R. 606, there was a sale of goods to one Holt, conditioned that one hundred and fifty dollars cash should be paid down, and the residue in the spring; seventy-five dollars only were paid when the goods were delivered. Shortly after the delivery, the goods were attached at the suit of one Babcock. The defendant, a sheriff, pleaded property in Holt, and the plaintiff replied property in himself. The court held that the actual delivery of goods, under a contract of sale, does not of itself transfer the ownership in them. To perfect the title of the vendee, there must be a consummation of the contract of sale. In the case of a conditional sale of goods, where the condition is not performed by the vendee, the vendor may establish his property in the goods, without shewing the contract rescinded. In *Whitwell* v. *Vincent,* 4 Pick. R. 449, it was held that it is not necessary, in order to make the delivery conditional, that an *express declaration should be* made to that effect at the time of delivery. In the case of *Keeler* v. *Freeman,* 1 Paige, 312, where a merchant contracted for goods, the price to be secured by his note, with endorsers, and the goods were in the meantime forwarded to his residence, it was *held* that the property was not changed until the delivery of the note, and the persons to whom the goods had been assigned to secure a previous debt, could not hold them against the vendor. See also, as recognizing the same principles, *Hussey* v. *Thornton,* 4 Mass. R. 405; *Mason* v. *Lickbarrow,* 1 H. Black. 362; *Palmer* v. *Hand,* 13 Johns. R. 434.

The rule in all conditional sales being so well established, it is perhaps unnecessary to pursue the subject further, unless it be to notice the reasonableness of the rule. In sales at auction and most generally in private sales, particularly in the sale of dry goods, it becomes absolutely necessary that the goods should be delivered before the payment is made, as the purchaser must have time to ascertain, first, whether the goods agree with the sample; second, whether they contain the quantity; and third, whether they are sound and free from damage. This will require some days, and therefore the time between the sale and delivery of the goods by the re-

spondents to the appellant, (eight days) and when he was called on for the notes, is by no means unreasonable. If, in conditional sales, the delivery of the goods in all cases placed the property in the vendee, it would open the door to extensive frauds. In the present case the goods were purchased by the appellant on the 16th of September, and on the 19th, only three days after the purchase, he failed. He admits he was insolvent when he made the purchase, but avers he did not know it. The next day after his failure, he assigns the goods to Duane, who forthwith ships them to Philadelphia, where they are sold at auction. The assignment is not made for the benefit of those of his creditors of whom he purchased goods, but solely for the benefit of three persons named, of one of whom he had borrowed money, and for drafts drawn on him by others, or for the benefit of those who endorsed them, for what purpose is not mentioned. In all this the appellant avers he acted honestly, and that he made the purchase in good faith, and not in contemplation of his insolvency and failure in business. Be this as it may, the delivery of the goods did not place the property in the appellant, he not having performed his part of the contract by delivering the notes, either such as he had received on the re-sale of goods from his customers, which he admits to be the condition, or in approved endorsed notes, as averred by the respondents to have been the condition.

I am, therefore, in favor of affirming the decree of the chancellor.

By Mr. Senator Maynard. No proofs have been taken in the cause, and all matters of fact must be determined from the bill and answer. The material allegation in the bill is, that the goods were sold and delivered *upon a condition*, from which it is inferred, that until there was a compliance with that condition, they were held in trust for the respondents. It is expressly denied that they were sold and delivered upon any condition whatever, or in conformity with any local custom or usage from which such condition might be inferred.

I cannot agree with the chancellor, that if the goods were sold and delivered under an agreement between the parties

that payment was to be made in the notes of the customers of the vendee, endorsed by himself at "such reasonable time thereafter as should suit his convenience," that the delivery was attended by any condition. It was a specified mode of payment, but one that precluded a retention of any *lien* upon the goods. In what respect was this sale upon that supposition more conditional than any sale where payment is to be made at a future time, in a specified manner, and no agreement that upon a failure to pay, the goods were to be returned? If a lien were retained, when was it to cease? There was no specification of time. At "such reasonable time after the sale as might suit the convenience of the vendee," is too indefinite for the retention of a lien. Where a sale is conditional, and there be a delivery without a compliance, the goods cannot, in all cases, be reclaimed. Where goods are sold for cash, and delivered without payment, the property is changed. *Chapman* v. *Lathrop*, 6 Cowen, 110.

The case of *Haggerty* v. *Palmer*, 6 Johns. Ch. R. 437, has been cited in support of the supposed rights of the respondents. In that case the bill was substantially the same as in this. The answer is not given in the report. The chancellor held, that the vendor was entitled to the proceeds of the goods then in the hands of the assignees of the vendee. That decision was founded on the assumption that the sale was conditional, and that until the notes were given in payment, the delivery of the goods was a deposit, in trust for the vendor. The Chancellor assigns as a reason for his opinion, that " in a case like this, *where the purchaser knew of the usage, and that the delivery of the goods before the delivery of the notes was a deposit in trust, and well understood to be upon the delivery* of the notes," &c. from which it may be inferred that there was no dispute about facts, and that the sale and delivery were admitted in the answer to have been upon the condition, under the circumstances, and according to the usage alleged in the bill. Such is not this case. Here the allegations of the bill as to the conditional character of the sale and delivery, are directly and expressly denied ; a special agreement, inconsistent with a conditional sale averred, and an explicit averment that the sale

was absolute and unconditional : therefore the trust supposed in that case did not exist in this. I do not deem it necessary to determine what the decision should be, if the allegations of the bill as to the terms of the sale, and the condition of the delivery, had been admitted in the answer. It is sufficient that there is a direct, unequivocal denial, in place of admission, and no proof in support of the allegations.

It is insisted also, that there was fraud, and that on that ground the respondents are entitled to the proceeds of the goods. It is not charged that the *purchase* was fraudulent, but that the voluntary assignment was an act of fraud. In the case of *Haggerty* v. *Palmer*, the chancellor held such assignment fraudulent ; but that opinion was founded on the same assumption that the sale and delivery were conditional, and the vendee a trustee for the vendor. Upon such a state of facts, a voluntary assignment would unquestionably be fraudulent. It would clearly be an act of fraud in a debtor, to assign as his own, and for the payment of his own debts to favorite creditors, property which he knew he held only in trust. But the change of facts changes the character of the transaction. Here the condition, and consequently the trust inferred from it, are denied. On the principle that governed the case of *Haggerty* v. *Palmer*, the assignment in this case cannot be declared fraudulent. The case of *Keeler & Freeman* v. *Field*, 1 Paige, 312, was like that of *Haggerty* v. *Palmer*, except that the vendors were not auctioneers. In that case also, there was no dispute about facts ; the material allegations of the bill were admitted by the answer. That was held to be a conditional sale, and the voluntary assignment, without fulfilment of the condition, an act of fraud. If it were a conditional sale, there can be no doubt of the correctness of the decision which was made solely upon that assumption. The facts in that case would perhaps justify the conclusion that the vendee meditated fraud when he made the purchase ; and if so, having acquired possession of the goods by fraud, the title was not changed. But the principle of that case has no application to a sale made on no condition other than that payment should be made in a specified manner at an undefined period.

There does not appear to have been fraud in the *purchase*. It is not charged, and Furniss denies all fraudulent acts or intent, and avers in his exculpation, that although he was insolvent at the time, he did not know it, and never supposed he should be compelled to stop payment until the day of his actual failure. He avers, that until that day, he was in full business, and daily received and paid greater sums than the amount of those purchases. The case of *Conyers* v. *Ennis*, 2 Mason, 236, is a strong one against the imputation of fraud from such circumstances. There the vendee was "deeply and fraudulently insolvent," and two days after giving the order for the property in question, committed suicide, in consequence of the detection of his frauds ; yet that purchase was not held fraudulent. The circumstances chiefly relied upon in vindication of the honesty of intention were, that the vendee " was in full business as a merchant, and there was no reason to suppose that he did not expect to keep in business ;" and that " the sum was not so large as not to be completely within the ordinary means of a merchant." All these exculpatory circumstances exist here, and although Furniss was " deeply," it is not charged or pretended, that he was " fraudulently" insolvent. Some acts of the assignee were relied upon in support of the allegation of fraud ; they are not such as imply fraud, and there is no proof that they were done with fraudulent intent, nor is it charged or proven that Furniss had any agency in causing them. My opinion is, that the equity presented by the bill is denied by the answer, and that the order of the chancellor was incorrect, and that the injunction shall be dissolved.

By Mr. Senator TALLMADGE. I concur in the opinions expressed, that the *special agreement* repudiates all idea of a conditional delivery of the goods. This, of itself, is a sufficient ground on which to reverse the order of the chancellor. I am strengthened in this view by the fact stated in the answer, that it is the usage, generally, *on Saturday of each week* succeeding the sales, to send for the notes to be given on such sales. The two packages of goods were sold, the one on the 11th, the oth-

VOL. VIII.            34

*Margin note:* ALBANY, Dec. 1831. Furniss v. Home.

er on the 16th of September, and notes called for on the 25th of the same month—a lapse of 9 and 14 days. This shows that all parties acted under the special agreement; and the probability is, had not Furniss stopped payment, " approved endorsed notes" would not have been demanded, but he would have paid in the notes of his customers under the agreement. The averment of the agreement is responsive to the bill; and aside from any other consideration, is a sufficient answer to the equity of the bill.

Laying the special agreement out of the question, I am constrained to dissent from the view taken by Mr. Justice Nelson of the custom or usage set up in the bill. If this had been a mere isolated transaction, there can be no doubt that it would be held an absolute delivery, within the principle of the case of *Lupin* v. *Marie*, decided in this court. There can be, therefore no condition annexed to the delivery, except it be under the custom or usage; which is, as stated by the respondents, when *goods* are sold at auction, to be paid for in approved endorsed notes, to deliver the goods so sold to the buyer when called for, and afterwards to send for the notes so to be given. This the appellants admit. But does it follow that the delivery was conditional? Or does it not rather show that the respondents relied on the implied promise and legal liability of Furniss, to give the notes when called for, according to the usage, and that the delivery was considered absolute? This is the more probable, from the further fact stated in the answer that the auctioneers claim the right to withhold the goods sold at auction until they are settled for agreeably to the terms of sale; and they exercise that right in all cases where the purchaser is a stranger, or his character for responsibility is unknown.

It may well be doubted whether the usage is sufficiently charged in the bill. Be that as it may, it is fully denied by the answer. *Local usage* is a matter of fact to be proved, and not of law to be settled by the court. Coming before us, as this case does, on bill and answer, the usage is not established. But, admitting for a moment that the usage is made out, and the delivery conditional, still I am inclined to think that the condition was waived by the lapse of time between the deliv-

ery of the goods and demand of the notes, within the case of *Smith* v. *Dennie*, 6 Pick. 262.

The bill does not charge fraud in the purchase of the goods ; neither do the facts justify such a charge in the assignment to Duane. All fraud, too, is denied by the answer. There is no pretence, therefore, on that ground, that the title to the goods did not vest in Furniss.

Such is, briefly, my view of the usage and of the question of fraud. Aside from these, I consider the case against the respondents on the special agreement.

On the question being put, *Shall this decree be reversed?* *Eighteen* members expressed their opinions in the affirmative, and *four* in the negative. The members who expressed their opinions in the negative were, *Senators* ALLEN, HUBBARD, THROOP and WARREN. Whereupon the decree was accordingly *reversed.*