## THE DRESSER MANUFACTURING COMPANY *vs.* ROBERT WATERSTON & others.

The plaintiffs contracted for a sale of goods to a printing company, in these terms:
"Dec. 4, 1839. Sold to R. S., agent of the printing company, 3 to 5000 pieces of printing cloths," [stating the price per yard] "on six months, for H. and B.'s acceptance, $2,000, by 25th inst., and balance in 60 days; the goods to be consigned in name of S. and M.," [agents of the plaintiffs,] "and insured by R. S. for account of said S. and M., and payable to them in case of loss; and when paid for by said acceptance, a bill is to be given said R. S., agent for the purchase." The cloths were sent to the printing company, with an invoice, which stated the substance of the above agreement, and said company caused them to be printed, and about the 18th of January 1840, consigned a part of them to the defendants, who were commission merchants, to be sold; and the defendants, having no knowledge of the contract above set forth, made advances to said consignors upon the goods so consigned. H. and B.'s acceptance was never procured by the printing company, nor did the plaintiffs demand said acceptance, or reclaim the goods, until after said consignment to the defendants. On the 28th of March 1840, the plaintiffs demanded the goods of the defendants, and the defendants refused to deliver them. *Held*, that the contract of the plaintiffs and the printing company was a conditional, and not an absolute sale; that the plaintiffs had not waived the conditions of sale; that the property in the goods remained in them; and that the defendants were liable to them in an action of trover. *Held also*, that the plaintiffs could recover, in damages only the value of the goods at the time they were delivered, and not their value after they were printed.

TROVER for printed cotton goods, called prints and furnitures. It appeared in evidence, at the trial before *Wilde J.* that on the 4th of December 1839, the plaintiffs owned 161 bales of brown cotton cloth, called printing cloth, which were sent, on the 7th of said December, by Sayles & Merriam of Boston, (the selling agents of the plaintiffs,) to the Home Printing Company of Attleborough, and received by said company, under a contract made with said Sayles & Merriam, as agents of the plaintiffs, through Elbridge Gerry, a merchandise broker. Said Gerry testified that he made said contract, and subsequently entered a memorandum thereof, in a book kept by him, as follows: "December 4. Sold R. Sibley, agent of Home Printing Co. 3 to 5000 pieces printing cloths at 5¼ cents, 0 months, for Hoyt & Bogart's acceptance $2000, by 25th instant, and balance in 60 days; the goods to be consigned in Sayles & Merriam's name, and insured by R. Sibley, agent,

for their account, and payable to them in case of loss ; and when paid for by said acceptance, a bill is to be given said Sibley, agent for the purchase. Elbridge Gerry." He also testified, that the contract was correctly set forth in this memorandum, and that it was understood by him that the goods were not to become the property of the Printing Company, until paid for according to the contract.

Charles Merriam, of the firm of said Sayles & Merriam, the plaintiffs' agents, testified that after the interview between Gerry & Sibley, Sibley called on him, (Merriam,) and that the understanding and agreement between him and Sibley were, that the brown goods should be put into the hands of the Home Print Works to be printed and sent to Hoyt & Bogart of New York ; and that after being placed in their hands, he (Merriam) was to receive their acceptance on 6 months for $2000, on or before the 27th of December, and the balance in acceptances of one or two thousand dollars, as soon as the goods could be placed in their hands, and all in 60 days from the delivery of the goods, to the amount of the invoice at $5\frac{1}{4}$ cents a yard ; the goods to be insured against fire, while in the brown state or printed, for the plaintiffs, payable in case of loss to Sayles & Merriam ; that Sayles & Merriam caused the goods to be insured, and Sibley agreed to pay the insurance ; and that the bill of the goods was to be given, when Sibley should furnish the acceptances ; that Sibley told the witness, that the Home Printing Co. had other goods in the hands of Hoyt & Bogart, on which they expected to get the first acceptance of December 27th, and that the witness ascertained from Hoyt & Bogart, before he closed the contract with Sibley, that they would accept on the goods, "as fast as Sibley should send to them prints made from the goods ;" that he (Merriam) sent the goods to the Home Printing Co. with an invoice in these terms : "One hundred and sixty one bales of printing cloths, 120,754$\frac{3}{4}$ yards at $5\frac{1}{4}$ cents, $6,339.63, consigned to the Home Printing Co., to be printed on the following conditions, viz., to be taken by said company and printed, fire insurance made payable to us in case of loss, and when said goods are printed, which is to be done within 30

to 60 days, then to be consigned to Messrs. Hoyt & Bogart of New York, or some other safe commission house mutually to be agreed upon, and said company to procure their drafts, accepted by said commission house or houses, for the amount of this invoice; viz., $2,000, six months from 27th inst. and the residue in acceptances not exceeding eight months from date of invoice, which is to be settled at six months' credit from date of invoice, and interest account made up accordingly. The acceptance to be handed over to us of $2000 by 27th instant, and all the others, as fast as obtained, in sums of one to two thousand dollars each, and all to be given within 60 days. December 5th, 1839."

It appeared in evidence, that said 161 bales of brown goods were sent by the Home Printing Co. to the bleachery of Joseph Pimbley in Smithfield, (R. I.) who testified that the goods were received and bleached by him, and that the several pieces thereof were marked with the letter G, for the purpose of enabling him to identify them ; and that he returned the same to the Home Printing Company.

G. Crawford, one of the Home Printing Co., testified that said goods, marked G., were printed by said company, and disposed of as follows ; one lot of 1533 pieces, containing 46,099 yards, was sent to Hoyt & Bogart of New York ; one lot of 26 cases, and another of 13 cases, containing in all 67,933 yards of prints, were marked G. C. on the cases, and were put up addressed to the defendants, and sent away, on the 18th of January 1840. Another lot, printed as furnitures, and consisting of 6 cases, or 6143 yards, were sent to the Providence Bleaching and Callendering Co. to be finished. Another witness testified that a lot of goods, answering the description of those last mentioned, was received by said Providence Bleaching &c. Co., and was by them sent to the defendants.

It was admitted by the defendants, that about the 18th of January 1840, they received from the Home Printing Co. a lot of 26 cases of prints, and from the Providence Bleaching &c. Co. a lot of 6 cases of furnitures ; and in February, 1840, a lot of 13 cases of prints from the Home Printing Co., which

cases, as to the marks thereon and the amount of goods, agreed with those mentioned by the witness, Crawford; but it was denied by the defendants, that said goods, or any part thereof, were ever the property of the plaintiffs. And much evidence was introduced, by both parties, in regard to the identity of the goods.

It was in evidence that the goods, which the defendants received from the Home Printing Co., were consigned to them by said company, and that the defendants had made advances thereon to the amount of $4325; which sum has never been repaid to them.

Hoyt & Bogart's acceptances were never obtained, nor did the plaintiffs demand them, or reclaim the goods, until after the printing company made their said consignment to the defendants. The plaintiffs demanded the goods of the defendants, on the 28th of March 1840, before the commencement of this action.

The defendants contended that even if said goods, or any of them, ever were the property of the plaintiffs, yet that the negotiation, made through Gerry, constituted a sale by the plaintiffs to the Home Printing Co., or that the plaintiffs, by entrusting the goods to Sibley, under the contract in question, made him their agent, and held him out as having authority to procure advances on the goods from any commission house; and they introduced evidence tending to show that such was the understanding of the Home Printing Co. But the judge instructed the jury, that if they believed the testimony of Gerry & Merriam, it proved a conditional sale only; and tha, as the acceptances of Hoyt & Bogart were never furnished, the plaintiffs were not devested of their title to the goods, and that Sibley had no right to pledge them to the defendants.

It was agreed by the parties, that if the verdict should be for the plaintiffs, it should be for a certain number of yards of goods, and nominal as to the sum; which sum should be altered according to the opinion of the court as to the right of the plaintiffs to recover the value of the goods in the printed state, or in the brown state; the price in the printed state to be determined by the net sales of the goods by the defendants

the value thereof in the brown state being agreed to be $4\frac{5}{8}$ cents a yard.

The verdict was for the plaintiffs, for the value of 45,531 yards of prints, and 6143 yards of furnitures, of the nominal value of $3500.

If, in the opinion of the court, the transaction of the parties, through Gerry and Sayles and Merriam, on the 4th of December 1839, constituted an absolute sale by the plaintiffs to the Home Printing Company ; or if the plaintiffs, by the contract in question and the proceedings under the same, clothed said Sibley with authority to procure advances on said goods from any other house than that of Hoyt & Bogart ; or if, under the circumstances in which said goods came into the possession of the defendants, they have a lien on them for their advances ; then the verdict is to be set aside, and a new trial granted : Otherwise, a verdict is to be entered for such sum as shall be due, according to the opinion of the court as to the right of the plaintiffs to recover the value of the goods in their printed or in their brown state.

*Watts*, for the defendants.   It appears from Gerry's memorandum, that the goods were " sold " ; and from the invoice, that the printing company were to take the goods to New York, and that the acceptances were to be delivered *to them* :   And neither the memorandum, nor the invoice, nor the testimony of Gerry or of Merriam, shows an agreement that the goods should remain the property of the plaintiffs until the acceptances should be furnished.   This case is thus distinguishable from most of those which will be relied on by the plaintiffs

The case is to be decided on the facts, and not on Gerry's understanding of their legal effect ; and the facts show an absolute sale.   2 Bl. Com. 446.   *Buffum* v. *Merry*, 3 Mason, 478 But if the circumstances of the transaction had been such that, as between the original parties, the vendors might have rescinded the contract and reclaimed the goods, while they were in the hands of the vendee ; yet, until the contract was rescinded, the vendee had power to make a valid sale to a *bonâ fide* purchaser without notice.   2 Kent Com. (3d ed.) 497.   *Rowley* v. *Bigelow*

12 Pick. 307. *Mowrey* v. *Walsh,* 8 Cow. 238. *Buffington* v. *Gerrish,* 15 Mass. 156. *Smith* v. *Dennie,* 6 Pick. 262.

A delivery of one's goods to another, on his promise to return or pay for them, passes the property therein. *Hurd* v. *West,* 7 Cow. 752. *Holbrook* v. *Armstrong,* 1 Fairf. 31. *Dearborn* v. *Turner,* 4 Shepley, 17. .

In the cases that will be cited for the plaintiffs, it was *agreed by the parties,* that the property should remain in the vendors until paid for. In *Barrett* v. *Pritchard,* 2 Pick. 512, this circumstance was specially relied on by the court. So in *Patten* v. *Clark,* 5 Pick. 5. *Sawyer* v. *Shaw,* 9 Greenl. 47. *Tibbetts* v. *Towle,* 3 Fairf. 341.

If, however, it should be held that any condition was annexed to the sale of the goods, there was none annexed to the delivery ; and where the delivery is unconditional, the property passes *Furniss* v. *Hone,* 8 Wend. 247. *Carleton* v. *Sumner,* 4 Pick. 516. *Lupin* v. *Marie,* 6 Wend. 77. *Smith* v. *Dennie,* 6 Pick. 262. *Chapman* v. *Lathrop,* 6 Cow. 110. *Hussey* . *v.* *Thornton,* 4 Mass. 405.

But if the sale and the delivery were both conditional, when made, yet the condition has been *waived* by the plaintiffs. Though an acceptance was to have been furnished by the 27th of December, yet the plaintiffs let the goods remain in the hands of the printing company about three weeks after that day, without reclaiming them or demanding the acceptance. If the plaintiffs had used due diligence, the defendants would not have been exposed to imposition. *Smith* v. *Dennie* & *Furniss* v. *Hone,* ubi sup.

The plaintiffs gave credit on the sale of the goods, and therefore have no lien on them for the price. 6 East, 27, *note.* But the defendants, under the circumstances of the case, have at least a lien thereon, to the extent of their advances. The plaintiffs authorized Sibley or the printing company to procure advances on the goods from other houses besides that of Hoyt & Bogart. Sibley had the invoice, and there is no proof that the defendants ever saw it ; but if they did, it was evidence of ownership in the printing company. The printing company were the plain-

tiffs' agents, and the plaintiffs are bound by the acts of the company. See 20 Wend. 275. Story on Agency, 100 – 102. 2 Kent Com. (3d. ed.) 621.

As the defendants have been guilty of no tort, the plaintiffs can recover, if at all, only for the value of the goods in the brown state. *Green* v. *Farmer*, 4 Bur. 2223. 2 Kent Com. (3d ed.) 363. *Brown* v. *Sax*, 7 Cow. 95.

*Washburn*, (*Child* was with him,) for the plaintiffs. The transaction with Gerry was not a sale, but a contract for a sale. His memorandum, and the invoice furnished by Merriam, show that the property in the goods was not intended to pass, and that a bill of them was not to be given, until the acceptances should be furnished. Though the goods were delivered, yet as the invoice accompanied the delivery, and contained the terms of the contract, there was no waiver by the plaintiffs.

The case of *Reed* v. *Upton*, 10 Pick. 522, shows that the defendants cannot succeed on the ground of their being *bonâ fide* purchasers. Nor had they a lien on the goods. *Loeschman* v. *Machin*, 2 Stark. R. 311. *Featherstonhaugh* v. *Johnston*, 8 Taunt. 237.

If the Home Printing Company could have sold the goods to the defendants, yet they could not pledge them. Story on Agency, 74. 219. 220. Or if the company had a lien on the goods for the printing, they could not transfer that lien to the defendants. Yelv. (Amer. ed.) 67 *g*, *note*.

The plaintiffs rely on *Barrett* v. *Pritchard*, 2 Pick. 512. *Providence County Bank* v. *Benson*, 24 Pick. 204. *Patten* v. *Clark*, 5 Pick. 5. *Whitwell* v. *Vincent*, 4 Pick. 449. It is as clear in the case at bar, as in either of these cases, that the property was not intended to pass absolutely.

The damages should be the value of the goods in their printed state, viz. the value at the time of the conversion. *Kennedy* v *Whitwell*, 4 Pick. 466. *Johnson* v. *Sumner*, 1 Met. 172. *Stevens* v. *Briggs*, 5 Pick. 177.

*C. Allen* replied.

WILDE, J. This case turns on a question of property, and that depends on the construction of a certain contract between

the plaintiffs and the Home Printing Company, under whom the defendants claim title. The case is trover, charging the defendants with the conversion of sundry cotton goods, consisting of prints and furnitures, and the defendants rely on an alleged sale from the plaintiffs to the said Home Printing Company.

The terms of the contract between the two companies were proved by the testimony of the agents of the contracting parties who made the contract, and by Elbridge Gerry, a merchandise broker, through whom the parties contracted. Gerry, after the contract was completed, entered a memorandum of it in a book kept by him, as follows : [The judge recited this memorandum, as set out, *ante*, pp. 9, 10.]

Gerry testifies that the contract was correctly set forth in said memorandum, and that it was understood by him, that the goods were not to become the property of the Home Printing Company, until paid for according to the contract. And C. Merriam, one of the plaintiffs' agents, testifies that Sibley stated the terms of the contract substantially as they were stated in Gerry's memorandum ; and they are so stated in the invoice of the goods.

This is the substance of the evidence of the contract, and there is no contradictory evidence, and no question has been made as to the terms of the contract ; the question is, what is its true construction ?

The jury were instructed, that if they believed the testimony of Gerry and Merriam, it constituted a conditional sale, and that as it appeared that the acceptances of Hoyt & Bogart were never furnished, the plaintiffs were not devested of their title to the goods ; and this construction of the contract we think correct, and conformable to the manifest intention of the contracting parties. It appears very clearly from the evidence, that the plaintiffs never intended to trust to the personal credit of the printing company, for the payment of the purchase money, and that it was so understood by the other party. The goods were to be consigned in the names of the plaintiffs' agents. The agent of the printing company agreed to cause the goods to be insured for the plaintiffs' account, and when paid for by the acceptances,

a bill of the goods was to be given to the agent of the purchase.

The true meaning of this agreement is apparent, and by no reasonable construction can it be considered as an absolute sale. It was either a conditional sale, by which the property was not to vest in the vendees, until they should give security for the price ; or it was an executory contract of sale, to be completed on the performance of the same condition. And upon either construction, the property in the goods was not changed.

It has been said, that no express condition is to be found in the terms of the contract ; but no particular words are necessary to express a condition ; and we think the stipulation, on the part of the plaintiffs, to give a bill of the goods when security should be given for the price, implies the condition on which the property in the goods was to vest in the vendees. And this is confirmed by the other terms of the contract, and by the whole evidence in relation to the question of property. The goods were consigned by the plaintiffs to the printing company, upon certain conditions, and were insured as their property according to the terms of the contract ; which conclusively shows that the goods were considered by the parties as the property of the plaintiffs. And there is no evidence whatever which has any tendency to prove an absolute sale.

But admitting the sale to be conditional, the defendants' counsel contend that it had become absolute before the consignment of the goods to the defendants ; either by an unconditional delivery, or by the unreasonable neglect of the plaintiffs to demand the performance of the condition, or to reclaim the goods.

That a conditional sale may become absolute by an unconditional delivery, unless from the circumstances of the case it should appear not to have been the intention of the vendor to waive the condition, is undoubtedly a well established doctrine. But in the present case, it is manifest that, by the terms of the contract the goods were to be delivered to the printing company to be printed, and to be afterwards consigned to Hoyt & Bogart, for the purpose of procuring their acceptances, and to enable the printing company to perform the conditior of sale    The goods

were consigned to them as the plaintiffs' property, and not to complete the sale. The delivery was in pursuance of the contract, and there is no ground for the presumption that the condition was waived. If the contract was conditional, so was also the delivery. The condition, by the contract, was not to be performed until after the goods should be printed and the acceptances should be procured ; and the consignment of the goods to the printing company for that purpose, instead of proving a waiver of the condition, rather proves the plaintiffs' intention to insist on its performance. But the plaintiffs were not bound to exact a strict and punctual performance of the condition ; and by their allowing further time for the performance, they are not to be considered as having waived the condition There is, therefore, no evidence of the waiver of the condition of sale ; and it is immaterial whether the contract be considered as an executed contract of sale, or as an executory contract to be completed by a bill of sale after the performance of the condition. If by the terms of the contract the condition were to be performed at the time of the delivery, and the performance of the condition were not then insisted on by the vendor, this doubtless would be good evidence of its waiver. *Furniss* v. *Hone,* 8 Wend. 247. *Carleton* v. *Sumner,* 4 Pick. 516. *Smith* v. *Dennie,* 6 Pick. 262.

The other ground of defence is, that admitting the property to be the property of the plaintiffs, yet as the Home Printing Company were their agents, they are bound by their agents' acts, although done in violation of the plaintiffs' instructions. But the Home Printing Company were the special agents of the plaintiffs, with limited authority to do certain acts ; and it is very clear that as they exceeded their authority, the plaintiffs are not bound by their acts. A special agent cannot bind his principal by any act not expressly authorized.

In regard to the damages, we are of opinion that the plaintiffs are not entitled to recover the full value of the goods in their printed state. The value of them in their brown state appears to us a more just and equitable measure of damages under all the circumstances of the case. *Green* v. *Farmer,* 4 Bur. 2223