## FARNSWORTH & a. v. CHASE.

In assumpsit for goods sold, it is competent for the defendant to prove that, by the usage of dry goods jobbers, in Boston, to which class the plaintiffs belonged, goods not purchased on a cash sale, are purchased on a credit of six months, where the bills are not marked.

Such usage is binding on the plaintiffs, if it be proved to be uniform, known and established, and whether it be so is a question of fact for the jury, although there may be contradictory evidence on the point.

Where a witness lives at Manchester, and his deposition is taken, to be used at Amherst, a distance of more than ten miles, the place of trial is by law at Amherst, at the time of the caption, and the mere fact that the case is not tried at Amherst, but is continued to the next term at Manchester, is not sufficient to render the deposition incompetent to be used on the trial of the case in Manchester.

ASSUMPSIT. The writ contained three counts. One, on an account annexed for dry goods, to the amount of $627,24. One for goods sold and delivered, and the third for money had and received.

Farnsworth *v.* Chase.

The defence was that the goods were purchased on a credit of six months, and that the suit was prematurely brought.

It appeared that six months had not elapsed between the purchase of the goods and the date of the writ, and that the sale was not what was termed a cash sale.

To sustain the defence, the defendant introduced witnesses whose testimony tended to show an express contract made for a credit of six months, and the plaintiffs introduced witnesses, whose testimony tended to show that no such contract was made, and that nothing was said about a credit at the time of the purchase.

To show, further, that such was the contract and intention of the parties, the defendant introduced evidence tending to show that, by the usage of the trade of the dry g)ods jobbers in Boston, (to which class these plaintiffs belong,) goods not purchased on a cash sale, are purchased on a credit of six months, where the bills of the same are not marked.

It appeared that the bills of these goods were not marked. To the admission of this evidence the plaintiffs excepted.

In answer to the question, " What is the term of credit by the usage of the trade among the dry goods jobbers in Boston, when goods are not sold on a cash sale, and the bills are not marked?" Some of the witnesses stated that the usual time of credit, in such cases was six months. Others, that they always purchased on six months, and their bills were not marked. The competency of these answers was particularly objected to by the plaintiffs.

The plaintiffs then introduced evidence tending to show that the usage was not such as contended for by the defendant.

The plaintiffs then contended that if these goods were purchased on a credit of six months, they were obtained by false and fraudulent pretences and representations by the defendant of his property, and of his ability to pay for said

goods, and introduced evidence tending to show that such was the fact.

This evidence was excepted to by the defendant, but was admitted by the court.

In the course of the trial, the defendant introduced the deposition of Isaac Tompkins, a resident of Manchester. It appeared by the caption, that this deposition was taken prior to the last April term of this court, to be used at said term, which was held at Amherst, and that Amherst is more than ten miles from Manchester.

It was objected that the deposition could not be used at Manchester, but it was admitted by the court.

The court instructed the jury that if they found that the goods were purchased on a credit of six months, the verdict should be for the defendant, unless they were satisfied that they were obtained by false and fraudulent pretences; that in order to give any weight to the usage contended for by the defendant, they must be satisfied from the evidence that it was uniform, known and established; that if the defendant obtained the goods by false and fraudulent representations of his property at the time of the purchase, and that these representations were intentionally false, they should find for the plaintiffs, notwithstanding they might have been purchased on a credit of six months. To these instructions the counsel for the plaintiffs excepted. The jury returned a verdict for the defendant, and the plaintiffs moved to set the same aside, and for a new trial, for supposed error in the foregoing rulings and instructions of the court.

*Perley*, whom were *Foster* and *Farley*, for the plaintiffs.

Nothing was said when the goods were purchased about the time of payment. There had been no previous dealing, nor was any thing said about usage on the part of the plaintiffs. It was a general sale of goods on credit, without any thing being said as to the time of payment. It was merely a sale of goods, and whatever credit was given was not one

Farnsworth v. Chase.

that was to hinder the plaintiffs from commencing a suit at any time. Now we admit that a usage of trade may be shown, to explain the contract between the parties, but the term of credit that may be given is not properly a usage of trade. A general contract to pay for goods is simply a contract to pay money directly; and if all the contracts had been in writing, the evidence of the usage would be equally admissible. *Noble* v. *Kennoway*, 2 Doug. 510; *Lowry* v. *Russell*, 8 Pick. 360. A contract to pay money cannot be said to relate to any business in particular. This case is like that of a note payable generally on demand, and such a contract cannot be affected by a usage. *Homer* v. *Dorr*, 10 Mass. Rep. 26; *Eager* v. *Atlas Ins. Co.* 14 Pick. 145; *Frith* v. *Barker*, 2 Johns. 335. A usage of trade is to regulate only matters properly pertaining to that trade, and dry goods jobbers are not a separate *craft*, in the proper sense of that word, and you may as well show the usage of other persons as of them. The proper inquiry is, what is the manner of doing any particular business in relation to matters connected with it. If you go any farther than this, there may be as many usages as there are different towns in which such persons reside.

A usage must be uniform, known, reasonable, and not contrary to law. The case itself does not show an uniform usage to give six months' credit. It only shows that it was oftener so than otherwise. It states only what the usual time of credit was. There is no uniform usage shown to supply the absence of an agreement. It would not be safe to establish a usage on such evidence. The witnesses stated only that they purchased the goods at six months' credit, or that they made a bargain on six months' credit, and the evidence on the question of usage was contradictory.

As to the objection to the deposition, the witness must live more than ten miles from the place of trial, in order to render the deposition competent. The place of trial was at

Farnsworth v. Chase.

Manchester, and the witness lived there. It needs no further argument than a statement of the fact, to show that the deposition was improperly admitted.

*D. Clark*, with whom were *Cross* and *C. G. Atherton*, for the defendant.

If the sale were not a cash sale, the question is, what was the term of credit? The evidence of usage was offered to show what the contract was, and what the parties meant by it. The counsel for the plaintiffs has mistaken the purpose for which the evidence was offered. Our object was not to control the contract, but merely to show what the contract actually was. 2 Greenl. Ev. 207, § 251; Custom and Usage, U. S. Dig. 698, *Lowry* v. *Russell*, 8 Pick. 360; *Parrott* v. *Thatcher*, 9 Pick. 426; *Dwight* v. *Whitney*, 15 Pick. 179; *Goodenow* v. *Tyler*, 7 Mass. Rep. 36–46; Story on Cont. § 14. The witnesses in this case testified so as to prove that they had acted just as the parties would have done if a credit had been formally given. In the case of *Loring* v. *Gurney*, 5 Pick. 15, it was held that a usage of an individual, which is known to the person with whom he deals, may be given in evidence, as tending to prove what was the contract between the parties. The only mode of proving usage is by the evidence of those who have known it from their experience.

The deposition was properly admitted according to the practice, which has been to use depositions, taken to be read at one place, at another shire town in the county, although it may be within ten miles of the residence of the witness.

*Perley*, in reply.

Whether a sale is a cash sale or not, is a mere trick of the trade, which may affect only the price, and that may be a matter to be determined by usage. If evidence of usage is admitted, that controls and modifies the contract, and the

law settles that where goods are sold the contract is to pay for them immediately.

It cannot be known on what ground the jury returned their verdict, but if improper evidence affected the verdict at all, it must be set aside.

We do not deny that the course of dealing between two parties may be shown, because they are presumed to deal together as they have dealt before.

GILCHRIST, C. J. Upon proof of the delivery of the goods, the plaintiff would be entitled to recover in this case, unless the evidence offered by the defendant be sufficient to take the case out of the ordinary principles of law.

He alleges that the usage among the dry goods jobbers is to give a credit of six months, where the goods are not paid for on delivery.

The first question is, what evidence is sufficient to prove the existence of such an usage ? And what is the effect of the usage ?

A bill was drawn in the East Indies, payable to Campbell, or order, and by him indorsed to *Ogilby*, who indorsed it to the plaintiff. The defendant contended that the omission of the words *or order*, was equivalent to restrictive words, limiting the payment, and that they must have been originally inserted by the indorser. The plaintiff contended that a bill was in its nature assignable. The defendant offered evidence that, by the custom of merchants, the acceptor was not liable upon such an indorsement.

It was held that the evidence was inadmissible, because the law was already settled for the plaintiff; that the custom of merchants was part of the common law of England, and that two cases (referred to in the opinion) settled that there was no such custom of merchants as the defendants allege. *Edie* v. *East India Co.* 2 Burrows 1216. But it was not held that the parties might not make the indorsement restrictive by special agreement, or by the customary course

of some particular business, make an exception in their own case, leaving the general law to take its course. *Cowen,* J. *Gibson* v. *Culver,* 17 Wend. 309. In accordance with what was supposed to be the law in *Edie* v. *East India Co.,* it was held in *Frith* v. *Barker,* 2 Johns. 335, that usage could not be received to contradict a settled rule of commercial law. So, also, is the case of *Homer* v. *Dorr,* 10 Mass. Rep. 26, although a different doctrine was held in *Jones* v. *Fales,* 4 Mass. Rep. 245, and in the *City Bank* v. *Cutter,* 3 Pick. 414, and Mr. *Rand* thinks the decision of *Homer* v. *Dorr,* is " unaccountable." *Eager* v. *Atlas Ins. Co.,* 14 Pick. 145. In *Rushforth* v. *Hadfield,* 6 East 519, the question was as to the existence of a custom that carriers should have a lien on goods for their general balance. Six witnesses testified to particular instances where the custom had been applied. It was held that if a usage were so general as to furnish an inference that the party who dealt with a carrier had knowledge of it, and to warrant a conclusion that he contracted with the carrier on that ground, it would be sufficient, although it gave individuals a special privilege against the general body of creditors, in case of bankruptcy. Upon another trial of the same case, 7 East 224, it was held that such a lien might be implied from a usage of trade so general that the jury must reasonably presume that the parties knew it, and adapted it to their dealings. In *Richmond* v. *Smith,* 8 B. & C. 9, the question arose as to the effect of a custom of an innkeeper, to put luggage into his guests' rooms upon his liability for it. It was held that if the innkeeper did not mean to be liable for goods thus placed, he should have said so. *Cowen,* J., says, in *Gibson* v. *Culver,* 17 Wend. 311, that if the guest had come to a full knowledge of the landlord's practice, either by its general notoriety, or in any other way, it would be equivalent to notice. In this case, it was held that a custom of such age, uniformity and notoriety, that a jury would feel clear in saying it was known to the plaintiff, would be sufficient.

Courts take no notice of these local and particular usages. They are to be proved, like other facts, and necessarily by parol evidence.

It must appear to be so well settled and of so long continuance as to raise a fair presumption that it was known to both contracting parties, and that the contract was made in reference to it. *Eager* v. *Atlas Ins. Co.* 14 Pick. 141.

The question is, whether the parties contracted in reference to the usage, and, in this view, the fact of its being well established so as to be generally known to persons engaged in this course of business, is of importance, but not its antiquity. *Thompson* v. *Hamilton*, 12 Pick. 425. So, also, is *Williams*, v. *Gilman*, 3 Greenl. 276, in which case there was some contradictory evidence as to whether a certain usage existed at Hallowell. So, also, *Heald* v. *Cooper*, 8 Greenl. 2.

In action of assumpsit for goods sold, the defence was, that they were sold on a credit which had not expired when the action was brought. But it was held that the usage of an individual, known to persons with whom he deals, binds them. *Loring* v. *Gurney*, 5 Pick. 15.

To prove a usage to tranship goods from one packet to another, it is not enough that a few instances can be produced where it has been done without objection. The course of the trade must be uniform and general, and should be so well settled that persons engaged in the trade must be considered as contracting with reference to the usage. *Trott* v. *Wood*, 1 Gall. 443.

In *Van Ness* v. *Packard*, 2 Peters, 137, evidence was offered both to prove and disprove the existence of a usage that, in Washington, a tenant may remove buildings erected by him on the premises, if done before the expiration of the term. It was held that the evidence was competent; that whether it was such as ought to have satisfied the minds of the jury on the matter of fact, was solely for their consideration, open, indeed, to such commentary and observation as

the court might think proper to make. " We cannot say that they were not at liberty, by the principles of law, to infer from the evidence the existence of the usage. The evidence might be somewhat loose and indeterminate, and so be urged with more or less effect upon their judgment; but, in a legal sense, it was within their own province to weigh it as proof or as usage." *Renner* v. *Bank of Columbia*, 9 Wheat. 581; *Furnep* v. *Howe*, 8 Wend. 247.

In the case of *Wood* v. *Hickok*, 2 Wend. 504, it was held that evidence that it is the uniform practice of grocers to charge interest on goods sold after ninety days, does not amount to proof of the usage of a particular trade, of which all dealers in that line are bound to take notice, and are presumed to be informed. But if knowledge were brought home to the defendants of the usage of the plaintiffs, *Semble* they would be bound by it.

The usage must be proved as a fact, and like any other fact. It is not one of those matters which may be proved by hearsay. Reputation is not evidence of it. It is a part of the contract, which the parties made at the time, or it is nothing. If it be proved to be so generally known that the parties must fairly be presumed to have contracted in reference to it, it will bind them. Contradictory evidence may exist in relation to it, and the jury must weigh all the evidence, and come to a conclusion upon it.

Such are the results which the authorities warrant.

The defendant's evidence tended to prove that by the usage goods, not bought for cash, are bought on a credit of six months, where the bills are not marked. These bills were not marked. Some witnesses stated that the usual time of credit was six months, where bills were not marked. Others, that they always bought on six months, and their bills were not marked.

The plaintiff offered evidence that there was no such usage. This evidence the jury are to weigh.

The instruction of the court as to the usage was suffi-

ciently favorable to the plaintiff. It was that the usage must " be uniform, known and established." If it were so generally known that the parties may be considered as having contracted in reference to it, that is enough.

As to the admissibility of the deposition, it was taken at Manchester, where the witness resided, to be used at Amherst, a distance of more than ten miles. The trial was had at Manchester, at the October term of the court of common pleas. The practice has been, in such cases, to admit the deposition, as it was properly taken to be used at Amherst. The mere fact that the term where the trial was actually had, was held at Manchester, has not been held sufficient to exclude the deposition, unless the witnesses, as in other cases, were produced in court, as is often done by the party who objects to a deposition. The place of trial, at the time the deposition was taken, was, by law, at Amherst, and the fact that the case was not tried there, but was continued to the next term at Manchester, is not sufficient to render the deposition incompetent.

*Judgment on the verdict.*