### FLEEMAN *vs.* McKEAN and others.

Upon a sale of goods for cash, to be paid on delivery, the title does not vest in the purchaser upon actual delivery without payment, unless the condition is waived.

Where it is proved that by the usage of trade, upon a sale of goods for cash to be paid on delivery, the goods are delivered to the purchaser at the time of the sale, and the vendor calls for payment in two or three days, the non-exaction of the payment before it can be claimed, consistently with the usage, cannot be considered a waiver of the condition.

In an action by the vendor, to recover the possession of goods sold for cash to be paid on delivery, on the ground that the condition of payment has not been complied with, and that therefore no title passed to the purchaser, although possession has been delivered, the plaintiff has a right to explain the delivery; and if it is satisfactorily explained, such delivery will not amount to a waiver of the condition.

It is therefore erroneous for the judge to withdraw from the jury the question whether there has been a waiver of the condition, and to instruct them that the delivery of the goods was unconditional, and vested the title in the purchaser, absolutely.

It seems that where the original owner of goods voluntarily places them in the hands of the purchaser, and thus makes him the ostensible proprietor, a sale by the latter to a bona fide dealer without notice, will be valid to pass the title; although the sale by the original owner was on condition of paying cash on delivery, and such condition has not been performed.

THIS was an appeal from an order made at special term, denying *pro forma* a motion on the part of the plaintiff for a new trial. The action was brought to recover the possession of 71 bales of hops, sold December 28th, 1854, by the plaintiff to the defendant McKean, for $4708, payable in *cash upon delivery*. The hops were delivered on board ship December 30, 1854, but it did not appear on whose account the ship received them. Payment was demanded from McKean January 2d, 1855. He replied that he had sold a bill of·exchange to the defendant Innes, through Mr. Tempest, a broker, and would get the money on that day and bring it down. The next day McKean was told that the money must be paid that day. In reply, he said he would send in a check the next morning. The hops were then demanded from McKean, and he expressed his willingness to return them. It was proved that the custom of the trade is to deliver the goods and call for payment in two or three days. It

also appeared that a bill of lading was taken in the name of Walker, a clerk of McKean, and that Walker indorsed it to Mc-Kean ; that a bill of exchange attached to the bill of lading was handed to Tempest, the broker, to negotiate *for cash*, and that Tempest sold the bill of exchange to Innes *for cash*, January 1, 1855, but that Innes did not pay for the bill, and never advanced any thing on account of the bill or hops. No indorsement of the bill of lading to Innes was shown. It further appeared that on the 2d January, 1855, a check for $5000 was demanded from Innes as the proceeds of the bill of exchange, which he evaded and refused, and that the next day Innes offered to McKean, Ritchie, Bain & Co.'s check for $1200, and an account in their favor against him for the balance, which offer McKean refused, and no objection appeared to have been taken to this refusal by Innes. The goods were taken from the ship January 7th, 1855, after having been demanded. At the trial Innes only defended. Upon the foregoing facts the plaintiff rested. The court thereupon charged the jury that the delivery of the hops was absolute, and vested the title in McKean, and that the defendant Innes had acquired a valid title thereto as against the plaintiff, and instructed them to find a verdict in favor of Innes for the value of the hops and interest, and the plaintiff excepted. The jury rendered a verdict accordingly for $5101.63. The plaintiff appealed from the judgment entered thereon.

*J. W. Gilbert*, for the appellant. I. The hops were sold upon condition that McKean, the purchaser, should pay for them in cash upon delivery. Unless, therefore, this condition was waived, the property of the plaintiff was not changed, and he had a right to recover the possession of the goods. (*Smith* v. *Lynes*, 1 *Selden*, 41, *and cases cited. Palmer* v. *Hand*, 13 *John.* 434. *Haggerty* v. *Palmer*, 6 *John. Ch.* 437.)

II. There was no express waiver. Whether one can be implied, depends upon the question whether the parties intended, at the time the hops were delivered, to make an absolute or conditional delivery. (*Furniss* v. *Hone*, 8 *Wend.* 256. *Leven* v. *Smith*, 1 *Denio*, 573. 1 *Selden*, 41.) (1.) A mere handing over

of the goods, under the expectation of immediate payment, does not constitute an absolute delivery, but in such case the vendee holds the goods in trust for the vendor until payment is made or waived. (6 *John. Ch.* 437. *Russell* v. *Minor*, 22 *Wend.* 662. 1 *Denio*, 573. *Marston* v. *Baldwin*, 17 *Mass. R.* 606.) (2.) Nor is it necessary that the vendor should, at the time of the delivery, declare his intention to hold on to the condition. (*Smith* v. *Dennie*, 6 *Pick.* 266.) (3.) And effect will be given to the usage of the trade, in determining this question of intent. (8 *Wend.* 256. 6 *John. Ch.* 437. *Renny* v. *Duffee*, 4 *Ala. R.* 365. *Bradford* v. *Drew*, 5 *Metc.* 188. 1 *Greenl. Ev.* § 292. *Corlies* v. *Gardner*, 2 *Hall's S. C. R.* 345.)

III. The circumstances in evidence strongly repel all inference of an intent to waive immediate payment. (1.) The delivery was on board ship, and there is no evidence that the ship's receipt, or other muniment of title, was parted with by the plaintiff. (2.) Both the plaintiff and McKean acted in strict conformity with the usage proved. Payment was demanded on the third day after the sale, and this demand was not induced by any change of circumstances. It was followed up. McKean set up no waiver, but on the contrary, admitted the plaintiff's right to immediate payment, by promising to pay on the day of the demand. (3.) Upon a demand being made for the hops, on the fourth day after the sale, McKean asserted no title in himself, but recognized the right of the plaintiff to a return of them. (*See Hussey* v. *Thornton*, 4 *Mass. R.* 405.)

IV. The question of waiver was one of fact, and the court erred in excluding it from the jury. (1 *Selden*, 41.)

V. McKean having acquired from the plaintiff no title or right to the possession of the goods, actual or apparent, could not make a valid sale of them. A man cannot be divested of his goods unless by his own consent, or where he has voluntarily conferred upon another the apparent ownership, and the goods have been transferred by the latter to a bona fide purchaser. (*Saltus* v. *Everett*, 20 *Wend.* 267. *Brower* v. *Peabody*, 3 *Kernan*, 122.)

VI. There was no valid transfer made, of the goods to Innes,

and the court erred on this point. (1.) He did not become entitled to the bill of lading by virtue of his agreement with McKean to purchase the exchange, having refused to perform it. (*See Clarkson* v. *Carter,* 3 *Cowen,* 84.) (2.) There is no proof that the bill of lading was indorsed to him. (3.) He neither paid nor parted with any thing. (4.) His conduct was in bad faith, if not actually fraudulent. (5.) And, as we have seen, the plaintiff had conferred upon McKean no actual or apparent right to make the transfer.

*D. Lord,* for the respondent Innes. I. The question is simply one of title in the plaintiff. Not as to the title between Innes and McKean. There is no evidence of any collusion between McKean and Innes. And the cause was put by the plaintiff to the judge, solely on the effect of the delivery by the plaintiff, and the ruling of the judge was on this point only.

II. There is no evidence of any fraud in McKean, nor of any inability on his part to pay. He bought and received the goods, shipped them, drew a bill of exchange against them, with which he expected to pay in two or three days, the time of credit customary on sales for cash. He was unexpectedly defeated in this, by one of his creditors attempting a set-off. The case must therefore rest wholly on the legal character of the delivery.

III. Although the sale would warrant the vendor to retain until the cash was paid, or to make the delivery conditional; yet the delivery here was absolute. (1.) Nothing was said at the time of the delivery, whereby any condition was interposed. (2.) The delivery was on shipboard, and a bill of lading allowed to be given by the ship, binding her to deliver it to the consignee. (*The Mary Ann Guest, Blatchf. C. C. R.* 358.) (3.) No shipping receipts were taken in the plaintiff's name, nor any notice given of his retaining title, whereby the plaintiff's possession could be regarded as continuing. (*See Brower* v. *Peabody,* 3 *Kern.* 126.) (4.) A bill of exchange was drawn and sold in connection with the bill of lading; and the plaintiff was waiting for his pay out of that; which was all founded on the delivery being absolute. (5.) The delivery was complete, so that the

property was at the risk of the buyer, in case of any loss by fire or sea perils. (6.) This was not a delivery in parcels, and an insisting on payment, while the parcels are not all delivered; as in *Russell* v. *Miner*, (22 *Wend.* 662;) nor as in the case of the last parcel in *Smith* v. *Lynes*, (1 *Selden*, 46;) nor as in *Palmer* v. *Hand*, (13 *John.* 434,) where the conditions were enforced before the lumber was all delivered; nor like the delivery of a cargo of grain to be consummated by measuring, and where the condition is immediately insisted on, as in *Van Neste* v. *Conover*, (20 *Barb.* 556,) which case was in fact decided on the fraud of the vendee in making the purchase.

IV. The delivery here was a waiver of the condition to pay cash, and this as a matter of law, on the evidence. (*Smith* v. *Lynes*, 1 *Selden*, 44.) Here there was no refusal to deliver without a performance of the condition: on the contrary, the goods, weighed and marked, were delivered to the ship for the buyer, freely and completely. There was nothing said or done at the time of the delivery to make it qualified or conditional. There was no proof offered to change the legal presumption, arising from the absolute delivery. The case is like the delivery of the parcels in *Smith* v. *Lynes*, on a contract of sale, on condition " to be paid for on delivery, by indorsed notes." It is also like the case of *Furniss* v. *Hone*, (8 *Wend.* 256,) in the court of errors. The goods there were sold for indorsed notes: they were delivered September 16; the purchaser failed September 19; and assigned the goods on the next day. Held to be a delivery waiving the condition. See also the opinion of Marcy, J., in the court of errors, in *Lupin* v. *Marie*, (6 *Wend.* 80,) and the cases examined by him. The case is exactly like *Chapman* v. *Lathrop*, (6 *Cowen*, 110,) recognized in the cases in the court of errors. There, on the 6th May, the plaintiffs sold to the defendant goods at a low rate, to be paid in cash or current bills. On the same day the goods were delivered to the defendant; on the next day, the defendant offered an overdue note and cash, which was refused. The judge left the question to the jury as one of intent, and they found for the plaintiff. The court set the verdict aside for this error.

Fleeman v. McKean.

V. There was no evidence to go to the jury to show, that the delivery was intended to be otherwise than what it was in legal presumption. (1.) The delivery was on 29th December, and all actual control by the vendor parted with, and new obligations contracted by the vendee ; and no word of reserve, and no necessity on the part of the vendor to defer insisting on the condition. If this can be a question of intent, the intent must in all cases be guessed at, in the mere caprice of the jury. To entitle the party to go to the jury on the question of intent, there must be some proof beyond the mere fact of a demand, not at the time of the delivery, but after it was clearly completed. Here there was none. There is no reason for the court to relax the rule of diligence, requiring the vendor, who would insist on a condition, to do so. All the analogies of law are, that a condition not insisted on, is waived. Moreover, as the condition on a delivery, if held valid, defeats the property from passing, so that at any time within the statute of limitations, the title may be questioned, after any number of intervening sales, the courts ought not, from any notions of equity, to relax so necessary a principle.

*By the Court*, S. B. STRONG, P. J. The equity of this case is strongly in favor of the plaintiff. He sold the goods in question to the defendant McKean, for cash, to be paid on delivery, but which has not been paid, and McKean for that reason, was willing to return the goods, and makes no defense. The defendant Innes, who alone resists the plaintiff's claim, agreed to purchase a bill of exchange drawn by McKean to raise the money to pay for the goods, which purpose appears to have been known to Innes, for cash. Innes did not pay, or offer to pay, the money, but refused to do so, and tendered a check drawn by Ritchie, Baine & Co. for a part of it, and a receipted account of that firm against McKean for the residue. That transaction, surely, did not confer upon Innes any right to the goods. They were not sold or delivered to him, and he could only have acquired a lien upon them by and through a transfer of a bill of exchange, (which it seems the goods were designed to meet in a foreign market.) The proposed transfer to him was for money to be

paid down, and as that condition was neither performed nor waived, but continuously insisted upon, he acquired no title to the bill. He could not, therefore, defend himself except under the claim of McKean, and that, if it was ever valid, was voluntarily surrendered.

But it seems to me that McKean never acquired a valid title to the goods. The sale to him was upon condition that the price was to be paid upon delivery. In such a case, the title does not vest upon actual delivery, without payment, unless the condition is waived. That was admitted by the counsel for the defendant, upon the argument, but he insisted that an unexplained delivery would be conclusive evidence of a waiver of the condition. So, indeed, it would be, but was there not an explanation in this case, which, if not entirely satisfactory and conclusive, should have been submitted to the jury?' It was proved by the plaintiff that it was the custom of the trade to deliver goods sold for cash to be paid on delivery, and to call for a check in two or three days. The custom seems to be admitted by the learned counsel for the defendant in his second point, although he considers the delay as a credit, which I do not. It is simply an extension of the time for the performance of the condition. It appears to have been so considered by Chancellor Kent in *Haggerty and others* v. *Palmer*, (6 *John. Ch. R.* 437.) In that case it was proved that the goods were sold for approved indorsed notes, at four and six months, and that it was usual where goods were sold at auction (as those were) to deliver the goods to the buyer, and to send for the notes afterwards. The goods were delivered to the purchaser probably on the days of sale, (the 23d and 27th of May,) and subsequently, (on the 1st of June,) the vendors sent for the notes but they were not delivered, as the purchaser had in the mean time failed, and had made an assignment of his property, including the goods in question. There was nothing to show, or indeed to raise the inference, that the condition was insisted upon or even mentioned when the goods were delivered; nor was there any allegation that there was any actual fraud in making the original purchases. The chan-

cellor said that the delivery of the goods was conditional, and they were taken by the purchaser as a trustee for the sellers, until the delivery of the notes. In the case of *Furniss* v. *Hone*, (8 *Wend*. 247,) the reporter, in his head notes, considers it as an undecided question, "whether the delivery of goods under a usage or custom, where goods are sold at auction, to be paid for in approved indorsed notes, to deliver the goods to the buyer when called for, and afterwards to send for the notes, be an absolute delivery so as to pass the title, or only a conditional delivery." Chief Justice Nelson, in that case, remarked that it was contended that the delivery in such cases is in conformity to the known usage, subject to the expectation and condition that the indorsed notes will be ready when called for, and not with the intent or understanding of either party that the title to the property, or the lien upon it for the purchase money, shall be parted with until the security is given. This is the construction which has repeatedly been given to those auction sales by the court of chancery in this state, previous to the decision of the chancellor in the present case. (*Haggerty* v. *Palmer*, 6 *John. Ch.* 437. *Addis* v. *Hafield, MSS. per Ch. Jones. Haggerty* v. *Duane and Ferris*, 1 *Paige*, 321.) And it seems to me this general usage of business, known to all parties, and of course presumed to enter into their consideration in dealing with one another, with the attending circumstances, may fairly warrant the construction given to those rules. The transaction is not considered complete until the indorsed notes are received, by the very terms of the sale; but for the convenience of all parties concerned the property is delivered to the purchasers subject to those terms. That the vendor does not intend to trust to the personal responsibility of the purchaser appears from the conditions of the rule." In the same case, Senator Maynard, in speaking of the case of *Haggerty* v. *Palmer*, says that there "the sale and delivery were admitted in the answer, to have been upon the conditions, under the circumstances and according to the usage, alleged in the bill. Such is not this case." And he declined expressing any opinion as to what would have been the effect if the alleged usage had been

admitted. , Senator Tallmadge expresses some doubts whether the usage, if proved, would have qualified the delivery, but 'he says, that in-that case, the usage was not established, and he thought that if it had been made out, the condition was waived by the lapse of time (nine days) between the delivery of the goods and demand of the notes." Although it was held in that case that the delivery was absolute, yet the decision, (explained as it was by the two senators in the majority,) by no means overruled the judgments in the court of chancery to which Chief Justice Nelson alluded. Neither does the decision in *Smith* v. *Lynes*, (1 *Selden*, 41.) In that case there was no proof of any usage to qualify the delivery. The only opinion given was by Judge Paige, who said, " the delivery will be conditional if the intent of the parties that it should be so, can be inferred from their acts, and the circumstances of the case. The learned judge who tried this case, was evidently mistaken in the proposition advanced by him, that to make a delivery conditional it must be declared to be so in express terms." The learned judge mentions *Haggerty* v. *Palmer*, and says that in that case the delivery was held to be conditional in accordance with a usage of the city of New York, known to the purchaser, and the validity of which was not called in question by the parties to the suit. He expresses no disapprobation of that decision, and it is to be inferred, from what he said, that he approved of it. He also quotes with approbation the opinions of Senators Edmonds and Wager, in *Russell* v. *Minor*, (22 *Wend.* 662,) who put the question of waiver of the condition of the sale on the intention of the parties at the time of the delivery.

Now in the case under consideration the hops were sold for cash, to be paid on the delivery. The payment was a condition precedent to the acquisition of the title by the purchaser. What is, by the usage of trade, a payment of cash on delivery? It. is a payment within three days after the actual change of possession. The condition is, then, that the money shall be paid within the three days. Surely, the non exaction of the payment before it can be claimed consistently with the usage, cannot be considered as a waiver of the condition. The opin-

Fleeman *v.* McKean.

ions of Senators Edmonds and Wager in *Russell* v. *Minor*, and of Judge Paige in *Smith* v. *Lynes*, indicate very strongly, indeed Judge Paige says expressly, that it is not necessary in order to make a delivery conditional that it should be declared to be so in express terms. In this case there was a delay of but two of the three days allowed by the usage in demanding payment; surely, that is not enough to raise an irresistible presumption of an intent to dispense with the condition. In *Furniss* v. *Hone*, there had been a delay of nine days without any proof of a correspondent usage, and that undoubtedly raised a strong inference that the condition precedent had been waived. As to the actual intent of the vendor in this case, there can be no reasonable doubt. There is no evidence that there had been any change in the circumstances of the purchaser when a restoration of the goods was demanded. Payment was required, and when that was refused, the vendor claimed the return of the goods. This was far from showing any reliance upon the credit of the purchaser. There was no such reliance. Both parties acted upon the presumption that there would be a compliance with the usage. Putting the goods on board of the vessel would not indicate an intent to make an unconditional delivery, unless there was an expectation that she would sail before the expiration of the three days, and there was no proof of that, but the contrary is to be inferred, as she did not leave the port within that time. There was no evidence to show that McKean had parted with the bill of lading when he consented to restore the goods, and the redelivery of the goods with his assent would, under those circumstances, have relieved the shipmaster and the owners from any responsibility.

It was insisted on the argument that the rule contended for by the plaintiff would, if it should prevail, defeat the title of subsequent purchasers, and be highly prejudicial to the interests of commerce. I asked the counsel for the defendants whether, even supposing that a delivery under the circumstances of this case should be deemed incomplete as between the parties, a sale by the purchaser to an innocent dealer would not be valid? My impression at the time was, and still is, that as the original

owner voluntarily places the goods in the hands of the purchaser and thus makes him the ostensible proprietor, a sale by the possessor to a bona fide dealer without notice, would be valid and pass the title. It was so decided in *Haggerty* v. *Palmer*, and the decision was sustained by the court of appeals in *Smith* v. *Lynes*.

I am satisfied that the learned judge who tried this action erred in withdrawing the question whether there had been a waiver of the condition, from the jury, and in his instructions to them that the delivery of the goods was unconditional, and vested the title absolutely in the purchaser. The judgment must therefore be reversed, and there must be a new trial, costs to abide the event of the suit.

[KINGS GENERAL TERM, October 13, 1857. *S. B. Strong, Birdseye* and *Emott,* Justices.]