Dows, survivor &c., *vs.* Dennistoun and others.

### Reeve *vs.* The Same.

Where goods are purchased for cash on delivery, that is, the price to be paid within ten days, the very terms and import of the arrangement are that there is to be a qualified delivery, which is to precede payment.

An understanding, arrangement or custom that the possession of the goods shall be intrusted to the vendee for the purpose of enabling him to realize upon them, and thus provide the means for the payment of the price, cannot be construed into an absolute transfer of the title to the property, as between the original parties to it, or persons having no greater equities than the original parties.

And if, under such circumstances, the goods are delivered to the purchaser, on board a vessel, and he receives a bill of lading therefor, which, together with a bill of exchange drawn upon it, he transfers to third persons, before he has himself paid for the goods, upon an agreement that such third persons shall pay the amount of the bills within ten days, the latter cannot, as against the original vendors, set off against the bills the amount of debts owing to them by the purchaser.

The case of *Fleeman* v. *McKean*, (25 *Barb.* 474,) approved.

ON the 13th May, 1851, one Edward B. Cooper purchased of Dows & Cary, a firm consisting of the plaintiff David Dows and one John B. Cary, since deceased, 500 barrels of flour for cash, and the vendor by his direction sent the flour on board the ship Conqueror, it being understood that Cooper was sending the same to Liverpool for sale. The flour was so put on board the ship, and Cooper received the bill of lading therefor. It was proved, and the referee found as facts, that the purchase was for cash, by which the parties intended and meant payment at about ten days after the purchase, according to a custom in that trade to that effect. That on the 19th of May Cooper sold the bill of lading, and a bill of exchange drawn upon it, to the defendants, upon the understanding that the same was to be paid for on the 21st of May. On that day Cooper called on the defendants for the price or proceeds of the bill, and they declined to pay him the same, on the ground that they had that morning received advices of the dishonor of two previous bills purchased by them from and drawn

by Cooper, and they claimed to hold such price or purchase money to meet those bills, and the amount of another bill which they had purchased of Cooper, and which was dishonored in London on the 13th of May, and notice of which dishonor the defendants received on the 28th of May. The defendants were advised of Cooper's failure on the morning of the 21st of May. The referee found that the defendants were entitled to retain the avails of said bills of exchange and bills of lading, and apply the same to the indebtedness of Cooper to them. Upon his report judgment was entered for the defendants and the complaint dismissed with costs ; and from that judgment the plaintiffs appealed.

The facts in the second case were similar. The action related to a quantity of butter purchased by Cooper of the plaintiffs therein, under similar circumstances, and the bill of lading therefor and the bill of exchange thereon were sold to the defendants under the same circumstances, and the proceeds claimed by them to be held for the same purpose and for the same reason. In this case a like report was made, a like judgment entered thereon, and a like appeal.

*C. Van Santvoord,* for the plaintiff Dows. I. By the letter of Cooper to the plaintiff's firm, dated May 23d, 1851, the sale to Cooper was rescinded, and the plaintiff's firm of Dows & Cary were reinstated as owners of the flour; and the firm were thereby invested with all the rights of Cooper to the flour, in addition to all the equities and rights which belonged to them as unpaid vendors, under the circumstances of the case. (*Cross on Lien,* 361, 371. *Ash* v. *Putnam,* 1 *Hill,* 302.)

II. That a bona fide purchaser for value, without notice, would have acquired a good title by a sale and delivery of the flour from Cooper, by reason of the fact that the shipment of the flour and receiving the bill of lading therefor by Cooper, were with the consent of the plaintiff's firm, is not controverted by the plaintiff. Neither fraud nor unperformed con-

ditions of the sale to Cooper, would affect the title of a bona fide purchaser from him. (*Smith* v. *Lynes,* 1 *Selden,* 41.)

III. But the plaintiff insists that the fact that the sale to Cooper was for cash, that the delivery in advance of payment, was in compliance with the usage of the plaintiff's trade, in such sales, that it was made in expectation of payment in cash, within the time required by such usage, in connection with the evidence, showing that the sale was made for shipment, the evidence, as to the standing and credit of Cooper, and the representations on which the sale was made, exclude the idea that the flour was delivered to Cooper, relying for payment upon the personal security or ability of Cooper and his readiness to pay, and negative the conclusion that the delivery of the flour was intended to pass the title absolutely to him, without payment, or that he was permitted to ship the flour and take the bill of lading therefor, except upon the condition or in trust for a special purpose, viz : that he should use the possession or bill of lading to raise money to pay for the flour, from bankers, by pledge of the bill of lading, or in some other way, and should apply the money so raised in payment for the flour. And that under the circumstances, the lien of the plaintiff's firm of Dows & Cary, for the purchase money of the flour sold to Cooper, was not determined by the fact that the plaintiff's firm allowed Cooper to ship and receive the bill of lading for the flour ; nor could it be determined by a subsequent transfer by Cooper to a voluntary assignee, nor by any transfer by Cooper, on account of an antecedent or other debt, or otherwise, except to a bona fide purchaser for value, without notice of the plaintiff's interest. (*Story on Sales,* § 292.  *Leven* v. *Smith,* 1 *Denio,* 571.  *Haggerty* v. *Palmer,* 6 *John. Ch.* 437. *Keeler* v. *Field,* 1 *Paige,* 312.  *Hays* v. *Currie,* 3 *Sand. Ch.* 585.  *Chitty on Bills,* 82.  *Russell* v. *Minor,* 22 *Wend.* 659, 669  670.  *Acker* v. *Campbell,* 23 *Wend.* 372.)  (1.) The fact that the plaintiff's firm allowed Cooper to ship and receive the bill of lading for the flour, under an agreement necessarily implied from the facts and circumstances of the sale, it is sub-

mitted, is as effectual to repel the presumption that such allowance to Cooper to ship and receive the bill of lading, was an absolute delivery of the flour to Cooper, with the intention of thereby vesting in him a full and perfect title to the flour, discharged of all conditions and trusts, as an express agreement that Cooper should procure the bill of lading and sell a bill of exchange on some party abroad, pledging the bill of lading as collateral, and apply the proceeds of such sale in payment for the flour, would be. (*See opinion of Senator Allen in Furniss* v. *Hone,* 8 *Wend.* 260.) (2.) The equity of the plaintiff's claim to a lien, is strengthened by the consideration, that if the failure of Cooper's house in London, before the departure of the Africa from England, and before the purchase of the flour by Cooper, had been known to him at the time of the sale, and he had obtained the possession of the flour and bill of lading, on the promise to pay cash, it would have rendered the purchase by him fraudulent, and the contract voidable by the plaintiff, if not void for that reason. The ignorance of both parties of this fact, of the failure of Cooper's house, at the time of the sale, would be a good ground for the rescission of the contract, on the ground of a mistake or ignorance of a material fact. (*See* 1 *Story's Eq. Jur.* § 140, *&c.; Leger* v. *Bonnaffe,* 2 *Barb. S. C. R.* 475, 478, 479.) The voluntary rescission of the contract by Cooper, should be held to have the same effect as a rescinding by the judgment of the competent court.

IV. The defendants having full notice of the interest of Dows & Cary in the flour, at the time of their demand of the flour or the bill of lading, or that the defendants account to them therefor, on the 23d May, 1851, before any advance or payment thereon, or on the bill of exchange of Cooper, to which the bill of lading for the flour was placed as collateral, were not bona fide purchasers for value, without notice. (*White & Tudor's Lead. Cases by Hare & Wallace, Phil.* 1851, *vol.* 2, *pt.* 1, *page* 91, *and cases cited. Murray* v. *Finster,* 2 *John. Ch.* 155. *Wormley* v. *Wormley,* 8 *Wheat.* 421.) And the

refusal of the defendants, on such demands, to deliver the flour or bill of lading therefor, in the defendants' possession, or to account therefor to the plaintiff's firm, and the withholding of the same to apply on account of any demands against Cooper, growing out of other unconnected transactions between Cooper and the defendants, was by reason of the plaintiff's lien aforesaid, a wrongful conversion of the flour, which entitled the plaintiff to recover the value of the flour and interest, as damages for such conversion.

V. The conclusion of the referee, in effect, that the transaction between Cooper and the defendants, on or about the 19th May, 1851, was a sale of the bill of exchange, for £625, which was executed by the delivery thereof and of the two bills of lading as collateral, so as to vest the absolute and unqualified title to the bill of exchange and to the collaterals in the defendants, and to render the defendants debtors to Cooper, for the amount to have been paid for the bill of exchange, and that such indebtedness was available to the defendants, as a demand by Cooper upon them, against which the defendants were entitled to set off in this action, other demands against Cooper, growing out of other and independent transactions, and so by means of this circuity to apply the collaterals on account of such other demands against Cooper, are founded upon a misapprehension of the effect of the allegations of the pleadings, in regard to the delivery of said bill of exchange, with the collaterals, and a strange misapprehension of the nature and legal effect of the transaction between Cooper and the defendants, touching the sale (so called) of the said bill of exchange, and of the law applicable thereto. (1.) Regarding the draft or bill of exchange by Cooper, on his own house, accompanied by the collaterals, as merchandise, goods and chattels, the title to which would pass by an absolute delivery thereof to the custody of the defendants, upon their promise to purchase and pay cash, the title to the bill of exchange and collaterals, did not pass to the defendants, for the reason that the delivery in this case of the papers, in anticipation of the pay-

ment to have been made on demand, or on the next packet or steamer day, was in compliance with the usage in cases of sales for cash, and therefore not an absolute delivery thereof, which had the effect to vest an absolute and unqualified title to the bill of exchange, and to the collaterals in the defendants. (*See the cases cited under point* 2.) (2.) But independently of the inference that the delivery of the papers to the custody of the defendants was not an absolute and unconditional delivery, from the fact of its being in compliance with the usage aforesaid, by the pleadings in this case, the delivery is admitted to have been conditional upon payment. The finding of the referee, therefore, that the bill was absolutely delivered, so as to vest an unqualified title in the defendants to the bill and collaterals, is erroneous, and the defendants were not entitled to retain the bills of lading as collateral security, for the acceptance and payment of the bill of exchange, by reason of such delivery, either as against the defendants or as against Cooper. (3.) But the transaction between Cooper and the defendants was not the case of a sale and delivery of merchandise, goods or chattels, but of a security for the payment of money, the title to which, with a right of action thereon, which is necessary to complete the title, does not pass by a mere delivery of the papers; and of which the validity in the hands of the defendants was entirely dependent upon the payment of the consideration to have been paid therefor by the defendants, for the reason, that by the rule of law applicable to such securities, the refusal of the defendants to pay the amount to have been paid therefor, discharged Cooper from all liability to the defendants for its acceptance and payment, and as a consequence of such discharge, put an end to any claim of the defendants to retain the bills of lading, placed as collateral to such liability, to secure the acceptance and payment of the draft. The entire failure of the consideration has the same effect as its original and total absence. (*Byles on Bills,* 98.) (4.) According to the good sense of the transaction between Cooper and the defendants, and its legal effect, the thing stipulated

for by the defendants, for which they were to pay the amount to have been paid by them, was the liability of Cooper for the acceptance and payment of the amount of the draft, to be secured by the collaterals, and not the mere delivery of the possession and custody of the papers, in anticipation of payment, and of the liability of Cooper to the defendants for the acceptance and payment of the draft to accrue on such payment, and that liability failing, the mere delivery and custody of the bill of exchange and the collaterals by the defendants, under the unperformed agreement of the defendants to pay the amount agreed to be paid for snch liability, to be secured by the bills of lading, as collaterals thereto, without any averment or proof that such custody of the papers was of any benefit or advantage to the defendants, was not a sufficient consideration to support and give validity to the pretended liability or indebtedness of the defendants to Cooper, for the amount to have been paid therefor. (*Addison on Cont.* 374, *and case cited. Swan* v. *Cox*, 1 *Marsh*, 126. *Trimble* v. *Green*, 3 *Dana's Ken. Rep.* 356, 7. 2 *Kent's Com.* 463, 4, 5.) The transaction between Cooper and the defendants, may be resolved into a case of mutual promises, without any mutuality of contract and obligation, in which there was nothing to bind the defendants to the continuance of their promise. (*See Addison on Cont.* 22 *to* 24 ) (5.) The referee erred therefore in holding that the defendants were authorized to set off other indebtedness of Cooper, against the pretended indebtedness of the defendants to Cooper, for the amount to have been paid for the draft of £625. (6.) The cases cited by the defendants before the referee, of *Eland* v. *Carr*, (1 *East*, 375 ;) *Comforth* v. *Rivett*, (2 *Maule & Selw.* 510 ;) *Lechmere* v. *Hawkins*, (2 *Esp. N. P. Rep.* 626 ;) *Taylor* v. *Okey*, (13 *Vesey*, 180 ;) and *Downer* v. *Eggleston*, (15 *Wend.* 51, 54,) were all cases of actions upon contract, in which there were mutual subsisting demands at the time of the action brought, and such as the statutes of set-off gave the party defendant power to set against the plaintiff's demand. But no one of these cases recognizes any right of

set-off, except in actions in form *ex contractu,* nor on demands which would not themselves be the subject of set-off according to law. As to which, see 2 *R. S.* 354 ; 3*d ed.* 450 ; and *Downer* v. *Eggleston,* (15 *Wend.* 58.) The case of *Chapman* v. *Lathrop,* (6 *Cowen,* 110,) also cited below, is not an authority to the point that a set-off can be allowed in an action of trover, where such action lies, but it is an authority only to the point, that goods cannot be reclaimed by the vendor, after the property has been changed by a delivery to the vendee, sometimes cited for the extreme views as to the effect of a delivery to pass the title—views which have been virtually overruled by the later cases. (*See note at the end of the case, and comment on the note in Russell* v. *Minor,* 22 *Wend.* 670.)

VI. The flour, and bill of lading for the flour, having been deposited with the defendants, as a collateral security to the liability of Cooper, for the acceptance and payment of the draft which never had any inception, or was discharged by reason of, or on the refusal of the defendants to pay the amount to have been paid therefor, the defendants had no right to retain the flour or bill of lading to apply on debts of Cooper, growing out of other unconnected transactions. (*Story on Agency,* § 381. *President of the Neponset Bank* v. *Leland,* 5 *Metc.* 259. *Murray* v. *Burling,* 10 *John.* 174. *See also Brandas* v. *Barnett,* 3 *Mann. Gran. & Scott,* 530 ; *Green* v. *Farmer,* 4 *Burr.* 2218 ; *Key* v. *Flint,* 4 *Eng. Com. Law Rep.* 1 ; 2 *Story's Eq. Jur.* § 1433, *at end, and* § 1441.)

VII. And the refusal of the defendants to deliver the flour or the bill of lading therefor, in their possession, or to account therefor, on the demand made by the plaintiff, was a conversion thereof. (*See Zachrisson* v. *Ahman,* 2 *Sand. S. C. R.* 68.)

*F. B. Cutting,* for the defendants. I. The title to the 500 barrels of flour, passed to, and was absolutely vested in, Edward B. Cooper, at least so far as to enable him to dispose of the same to a bona fide purchaser, or for the purpose of obtaining advances or credit thereon.

Dows *v.* Dennistoun.

II. The sale and delivery by Cooper, on the 19th of May, 1851, to the defendants, of his bill of exchange on Cooper, Felton & McLane, of London, for £625, upon the security of bills of lading of the flour and butter, was absolute, and vested the title to the bill of exchange in them, and also invested them with a right to the aforesaid securities, as against Cooper and the plaintiff.

III. The defendants became and were indebted to Cooper for the price of the said bill of exchange, viz: £625 ($3074.72.)

IV. At the time the said indebtedness occurred, the defendants were creditors of Cooper, and had a valid set-off against the price of the said bill of exchange for the amount of Cooper's two bills of exchange on Cooper, Felton & McLane, amounting together to £485, which had been protested, and of the dishonor of which due notice had been given to Cooper. The defendants were also creditors of Cooper, as being the holders and owners of another bill of exchange drawn by him on Cooper, Felton & McLean, for £235, which last mentioned bill had been dishonored the 13th May, 1851, and of which Cooper was duly notified.

V. The right of the defendants to set off their demand was not impaired by the circumstance that the bill of exchange was sold by Cooper for cash. (*Downer* v. *Eggleston*, 15 *Wend.* 51. *Elan* v. *Kerr*, 1 *East*, 375. *Comforth* v. *Rivett*, 12 *M. & Selw.* 510.)

VI. The defendants were entitled to the possession of the bills of lading of the flour, and to the papers therein specified as against Cooper and the plaintiffs: consequently they were not guilty of conversion.

*By the Court*, DAVIES, P. J. It is not controverted in this case, that the defendants were not bona fide holders or purchasers of the bills of lading or exchange. They have paid nothing therefor, nor parted with any thing of value upon the faith thereof. They stand precisely, therefore, in reference to the debt due from Cooper to them, in the same position as

they would have occupied if Cooper had not delivered the bills to them, and they had not agreed to purchase the same.

The question then recurs, had Cooper such an absolute title to the flour that he could set up such title, as against the plaintiffs, who undeniably are the true owners thereof, unless they by their acts have constituted Cooper the absolute owner? If I correctly apprehend the first conclusion of law found by the learned referee, it is that the delivery of the flour to Cooper was absolute, and vested in him the title, at least to such an extent that he might sell and deliver it to a bona fide purchaser for value, or dispose of the bill of lading in the same manner. But it being conceded that the defendants are not such bona fide purchasers, does it not follow from the referee's finding, that Cooper had not such absolute title as would enable him to make title in one not a bona fide purchaser?

If Cooper was the absolute owner of the property, and the defendants became his debtors on sale of it to them, there could be no controversy as to their right to set off, against the debt they owed Cooper, those he owed to them. The question therefore recurs, was Cooper, under the circumstances disclosed, the absolute owner of the flour?

It was purchased for cash on delivery; that is, the cash was to be paid within ten days. The very terms and import of this arrangement are that there was to be a qualified delivery, which was to precede the payment; and it is apparent from the facts in this case that the possession of the goods was intrusted to the vendee for the purpose of enabling him to realize upon them, and thus provide means for the payment of the price. Such an understanding, arrangement or custom, cannot, we think, be construed into an absolute transfer of the title to the property, as between the original parties to it, or those who have no greater equities than the original parties.

A case analogous to this has been lately decided in this court, and will be found in 25 *Barb.* 474, (*Fleeman* v. *Mc-Kean.*) The facts are strikingly similar to those presented in this case, and the reasoning of the court is so sound and con-

clusive, and so strongly fortified by authority, that it is deemed necessary only to refer to it. It being a decision of this court so directly in point, we feel it our duty to adhere to it, as the law, and abide by it. We entirely concur in the correctness of the principles there enunciated, and have no hesitation in adopting them.

The judgment appealed from in each case is reversed, and a new trial ordered, costs to abide the event.

[New York General Term, September 20, 1858. *Davies, Sutherland* and *Hogeboom,* Justices.]